## LANDAY BROS. *v.* UNITED STATES (No. 1431).[1]

NEEDLES FOR PHONOGRAPHS.

Whether equipped with records of one kind or another, a phonograph without a needle capable of being fitted to it and of following the cuts or undulations of the records would not serve the purpose for which it was made and would not be a complete machine. The needles stand for tariff purposes on a footing with the records themselves.

### United States Court of Customs Appeals, February 3, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7551 (T. D. 34352). [Affirmed.]

*Allan R. Brown* for appellants.

*Bert Hanson*, Assistant Attorney General (*Frank P. Wilson*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

So-called needles for phonographs were classified by the collector of customs at the port of New York as parts of gramophones and assessed for duty at 45 per cent ad valorem under the provisions of paragraph 468 of the tariff act of 1909, which said paragraph is as follows:

468. Phonographs, gramophones, graphophones, and similar articles, *or parts thereof*, forty-five per centum ad valorem.

The importers protested. that the goods were manufactures of wire, dutiable either at 2 cents per pound, 2½ cents per pound, 2¾ cents per pound, or at 35 per cent ad valorem, or at those rates plus two-tenths of 1 cent per pound, or at 40 per cent ad valorem under that part of paragraph 135 of the tariff act of 1909, which reads as follows:

135. Round iron or steel wire, not smaller than number thirteen wire gauge, one cent per pound; smaller than number thirteen and not smaller than number sixteen wire gauge, one and one-fourth cents per pound; smaller than number sixteen wire gauge, one and three-fourths cents per pound: *Provided*, That all the foregoing shall pay duty at not less than thirty-five per centum ad valorem; * * * on iron or steel wire coated by dipping, galvanizing or similar process with zinc, tin, or other metal, there shall be paid two-tenths of one cent per pound in addition to the rate imposed on the wire of which it is made: *Provided further*, That articles manufactured wholly or in chief value of any wire or wires provided for in this paragraph shall pay the maximum rate of duty imposed in this section upon any wire used in the manufacture of such articles and in addition thereto one cent per pound: *And provided further*, That no article made from or composed of wire shall pay a less rate of duty than forty per centum ad valorem; * * *.

------

[1] Reported in T. D. 35151 (28 Treas. Dec., 235).

The Board of General Appraisers overruled the protest and the importers appealed.

It appears from the record that the goods described in the protest are made of steel wire and are designed to be used as complementaries of the phonograph in the reproduction of vibrations caused by sound and recorded on disks of suitable composition. The needles are attached to the reproducer of the phonograph, and when let down on the disk, to which a circular motion has been given, trace out the recorded vibrations and thus reproduce the sound which such vibrations represent. The metal points or needles may be used on any style of phonograph, except those fitted with cylinders of wax or with records having an undulating instead of a lateral cut. Phonographs furnished with records having an undulating cut require a permanent needle, shod with a precious stone, while those provided with records having a lateral cut are supplied with needles either of steel or wood. Needles pointed with precious stones may be used indefinitely. Steel needles, however, due to the hardness of the records on which they are employed, are, as appears from the evidence, worn away at the point by a single service, and therefore can be used but once. Whether wooden needles are any more durable than steel needles the testimony does not disclose, but for the purposes of the case we assume that they are not. Apparently concerns which manufacture phonographs do not manufacture needles, and those which manufacture needles do not manufacture phonographs. It also seems that phonograph needles are neither bought nor sold by importers with the machine. From this state of facts the importers' counsel deduces that the goods under consideration are mere accessories, not parts of the phonograph, and consequently not dutiable as assessed.

We do not think that the facts stated, whether considered separately or together, warrant the conclusions reached. Whether equipped with records of one kind or another, a phonograph without a needle of some kind capable of being fitted to it and of following the cuts or undulations of the records would not serve the purpose for which it was made, and consequently could not be regarded as a complete machine. The needle is a *necessary* part of the reproducer, the reproducer is an indispensable and integral part of the phonograph, and from that it would seem to follow that the needle is an essential part of the machine and not a mere aid, auxiliary, or accessory which might be omitted without rendering the whole device unserviceable. Whether the essential constituents that go to make up mechanical contrivances are made by different manufacturers, or are bought and sold by the importer as separate entities, or are standardized for all machines of the same class, or are quickly expended and frequently replaced, does not alter their status as parts of the mechanism, and they are just as much parts as if they had been assembled into the completed machine.

The claim that the relation of the needle to the phonograph is on a parity with that of the cartridge to the rifle is not apt to the purpose, for the reason that the popular conception of a completed rifle excludes the cartridge, whereas the common idea of a complete phonograph necessarily implies that it is equipped with a needle to make it work.

Abstract 25775 (T. D. 31675), relied upon by the appellants, is not in point. That case raised the question of whether 60 dozen needles for embroidery machines were entitled to admission free as *embroidery machines* under paragraph 197 of the tariff act of 1909 or dutiable as needles for knitting or sewing machines under paragraph 164 of the same act. Paragraph 197 accorded free entry to embroidery machines, but made no provision for the free entry of parts of embroidery machines. In paragraph 164 crochet, tape, knitting, and all other needles, not specially provided for, as well as bodkins of metal, were expressly enumerated and subjected to a duty of 25 per cent ad valorem. The needles which were there the subject of controversy were imported at the same time as the embroidery machines for which they were intended, but were packed separately. The board declined to accept the needles as *assembled* parts of the embroidery machines, and therefore regarded needles and machines as separate units or entities. As needles could not be classified as embroidery machines, and as paragraph 197 made no provision for parts of such machines, the exclusion of the needles from the operation of the paragraph naturally followed.

In our opinion the goods involved in this appeal are just as much parts of phonographs as are the records to which such needles are applied in order to reproduce sounds and are subject to the same tariff classification.

The decision of the Board of General Appraisers is *affirmed*.