(C. D. 1319)

WESTINGHOUSE AIR BRAKE CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 12, 1951)

*Jerome G. Clifford* for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*John J. McDermott* and *Richard H. Welsh*, special attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: This controversy relates to an importation described on the consular invoice as "Water Cylinder Top Head Monel Liners." The collector of customs classified the merchandise as articles not specially provided for, composed of metal, as provided in paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397), and assessed duty thereon at the rate of 45 per centum ad valorem. An additional duty of three-fourths of 1 cent per pound was assessed upon the copper content pursuant to section 3425 of the Internal Revenue Code (26 U. S. C. § 3425). This latter assessment is not challenged.

Various claims for lower rates of duty are invoked by plaintiff, but the one relied upon is that the merchandise should be classified as parts of steam locomotives and subjected to duty at the rate of 15 per centum ad valorem in accordance with the terms of paragraph 372 of said act (19 U. S. C. § 1001, par. 372). In view of the conclusion we have reached, it becomes unnecessary to consider other claims of plaintiff.

At the trial but one witness was introduced, William H. Glass. He testified that for 13 years he had been "design engineer" for the Westinghouse Air Brake Co., and that he had been familiar with the merchandise invoiced as Monel metal liners for some 10 years. He produced several photographs and drawings, which were received in evidence, to illustrate the character and use of the liners in steam locomotives. He testified that "This liner is used in the pump to prevent serious corrosive action that takes part [*sic*] in the internal part of the pump"; the liner is cast in a mold and becomes an integral part of the pump body, being irremovable when once it is put in place. The liner is used in what is described as a "C. F. pump, boil feed water

pump. * * * For pumping from the tender of the locomotive to the feed water heater and then pumps it directly into the boiler of the locomotive." The witness further testified, in substance, that the pump is an integral and indispensable part of a steam locomotive, which could not function without it; that "The function of the Monel liner that it performs is that it increases the—it is a necessary part of the pump because it aids considerably in reducing the corrosive action that takes place due to the various types of water encountered in different parts of the country."

The facts are not disputed. Defendant in its brief asserts that the "testimony clearly discloses that the involved liners are *not* parts of locomotives but *are* parts of feed water pumps, which said pumps are parts of locomotives." [Italics quoted.] Defendant then argues that since paragraph 372, *supra*, makes no provision for "a part of a part," it must follow that "the involved liners cannot be said to be parts of locomotives." No authorities are cited in support of this contention.

Plaintiff invites our attention to the case of *Richardson Co.* v. *United States*, 8 Ct. Cust. Appls. 179, T. D. 37289. The merchandise before the court in that case apparently consisted of carburetors which were so designed and constructed that they could only be affixed to and made parts of certain engines for tractors, which latter were chiefly used for plowing and thrashing. The court was accordingly of the opinion, and so held, that the particular carburetors there under consideration were subject to classification for tariff purposes as parts of agricultural implements.

Plaintiff also cites the decision of this court in *Central Aguirre Sugar Co.* v. *United States*, 60 Treas. Dec. 476, T. D. 45142, wherein we held that repair parts of steam engines constituting the operating mechanisms of so-called Fowler plows used exclusively in agricultural pursuits, were properly classifiable as parts of agricultural implements.

Another case which lends itself to this discussion is *Landay Bros.* v. *United States*, 5 Ct. Cust. Appls. 498, T. D. 35151, wherein it was held that so-called "needles" for phonographs were necessary parts of reproducers and that inasmuch as a reproducer was an integral and indispensable part of a phonograph, the "needles" were integral parts of phonographs.

Applying the principles of the cases above cited, it logically follows that since the Monel liners in controversy are parts of feed water pumps, which latter are parts of locomotives, as admitted by the defendant in its brief, the liners themselves are parts of locomotives. As stated by the Court of Customs and Patent Appeals in *United States* v. *American Express Co.*, 29 C. C. P. A. (Customs) 87, 93, C. A. D. 175, "* * * an integral part of an integral part of an article is an integral part of such article," citing the *Richardson* and *Landay* cases, *supra*.

Upon the facts of record, and in harmony with the authorities cited, we hold that the imported Monel liners are properly dutiable at 15 per centum ad valorem in accordance with the terms of paragraph 372, *supra,* as claimed by plaintiff. To that extent the protest is sustained, and judgment will issue accordingly.