(C. D. 1977)

STOEGER ARMS CORP. ET AL. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 10, 1958)

*Sharretts, Paley & Carter* (*Joseph F. Donohue* of counsel) for the plaintiff.
*George Cochran Doub,* Assistant Attorney General (*Henry J. O'Neill,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Plaintiff imported certain automatic pistols, mounted with a 5-cartridge magazine, together with an 8-cartridge magazine, an oil container with a pinpoint applicator, and a cleaning rod, all carefully packed in a small cardboard box, which was received in evidence as collective exhibit 1. The contents of exhibit 1 were marked in evidence as follows:

Exhibit 1–A, the 8-cartridge magazine.

Exhibit 1–B, the pistol containing the 5-cartridge magazine, the latter marked exhibit 1–C.

At the trial, seven protests enumerated in the schedule attached hereto covering as many importations, above described, were consolidated for hearing and determination.

The collector of customs classified the importations, other than the 8-cartridge magazines, as automatic pistols and imposed duty thereon at the rate of $1.75 each and 27½ per centum ad valorem,

as provided in paragraph 366 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 366), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739, supplemented by Presidential notification, 86 Treas. Dec. 384, T. D. 52857. The 8-cartridge magazines were classified by the collector as parts of automatic pistols in said paragraph 366, as modified, and duty was assessed thereon at the rate of 52½ per centum ad valorem.

Plaintiff, by its protests, challenges only the classification and rate of duty imposed upon the 8-cartridge magazines, claiming primarily that they are properly classifiable together with the other contents of exhibit 1 as entireties.

Plaintiff claims, alternatively, that, if the 8-cartridge magazines are not properly classifiable at the initial rate applicable to pistols as entireties, but are to be classified as separate tariff entities, they should then be relegated to classification in paragraph 397 of said act (19 U. S. C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, as articles of metal, not specially provided for, and dutiable at the rate of 22½ per centum ad valorem.

The pertinent text of paragraphs 366 and 397, as modified, *supra*, reads as follows:

Paragraph 366, as modified, *supra*:

Pistols and revolvers: Automatic, single-shot, magazine, or revolving, valued over $8 each_____ $1.75 each and 27½% ad val.

Parts and fittings for automatic, single-shot, magazine, or revolving pistols and revolvers_____ 52½% ad val.

Paragraph 397, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

*    .    *        *        *        *        *        *

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

*        *        *        *        *        *        *

Other * * * _____ 22½% ad val.

John T. Meehan, the only witness in the case, was called by plaintiff. The substance of his testimony is here set forth: He is office manager of the plaintiff company with which he has been associated since 1939, dealing primarily in firearms and ammunition related thereto. He had dealt in merchandise, such as exhibit 1, for many years and stated that it is a 6.35 millimeter Browning, having been developed by a certain John Browning. Meehan testified that the pistol or gun

(these terms being used herein synonymously) is used where concealment is of primary importance; that a man could carry it in his vest pocket; that when the gun is equipped with the 8-cartridge magazine, which is longer than the other, it permits a person to accurately hold the pistol, particularly for target shooting or for shooting small animals in the woods, which could not be accomplished with the smaller magazine. In other words, exhibit 1, in its imported condition, serves the dual function of a small concealed weapon and a weapon capable of more accurate firing. For the reasons above described, the plaintiff contends that the two magazines with which the gun is equipped are not interchangeable, but each has its recognized uses, differing one from the other, this being especially attributable to the increased length of the handle when the 8-cartridge magazine is used. It appears further, from the record, that the 5-cartridge and the 8-cartridge magazines are used exclusively with the imported pistol. As stated by Meehan, "* * * in no other make of gun or brand of gun, automatic pistol can they be used." Upon cross-examination, Meehan testified that the automatic pistol, exhibit 1–B, with the 5-cartridge magazine, may be sold with or without the 8-cartridge magazine, and that the latter may also be sold separately.

There was received in evidence as defendant's exhibit A the upper portion of page 47 of a catalog, published by the Stoeger Arms Corp., entitled, "The Shooter's Bible," wherein are depicted vest pocket automatic pistols similar to the article in controversy and indicating that they are offered for sale as follows: A pistol with an extra 8-shot extension magazine, in addition to the regular 5-shot magazine, or the 8-shot extension magazine as a separate item.

With this factual background, the question for our determination is whether or not a combination of the 8-cartridge magazine, the pistol, and the regular 5-cartridge magazine constitutes an entirety in the tariff sense. In support of their opposing contentions, the parties hereto have referred us to numerous cases decided by our court of appeals and this court, all of which have been given due consideration. Among them is the case of *Charles Garcia & Co., Inc.* v. *United States*, 45 C. C. P. A. (Customs) 1, C. A. D. 663, wherein the decision of the court below in *id.* v. *id.*, 37 Cust. Ct. 117, C. D. 1808, was affirmed.

The merchandise before the court in the *Garcia* case, *supra*, consisted of what are known as spinning reels used by sports fishermen. As imported, a spinning reel consisted of a frame, crank, gears, and a mandrel or spindle, and was packaged with two arbors or spools, one having a wide center core and the other a narrow center core for use in different types of fishing. As was stated by this court—

* * * One spool at a time fits on the spindle of the mechanism, and the spools are easily interchanged. Also, as imported, one of the arbors or spools was in-

serted in the mechanism, and the other was contained in a plastic box, all within a cardboard box, which is the package offered to the public.

The following appears from the decision of our appellate court—

The testimony is to the effect that the two spools are used alternatively, according to the type of fishing to be done, so that anyone who intended to do only those types of fishing for which one spool was suited would have no need for the other, and that it is possible, by a process known as "dummying up," to adapt a single spool to all types of fishing, although such a process is considerably less convenient than carrying an extra spool. It further appears from the testimony that most spinning reels are sold as commercial entireties with only one spool and that an order for a spinning reel, without qualifications, would normally be filled by supplying a reel with only one spool. It therefore clearly appears that the second spool is not indispensable to the use of the reel.

The court of appeals affirmed the trial court in sustaining the collector's classification of the extra spools for fishing reels as "Parts of fishing rods and reels, finished or unfinished, not specially provided for * * *" in paragraph 1535 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade. We consider the factual setup in the *Garcia* case, *supra*, strikingly similar to the record upon which the instant case is to be determined and is deemed to be controlling of our decision herein.

The record before us indicates that the automatic pistol is sold with the 5-cartridge magazine, or together with the 8-cartridge magazine as an extra extension magazine, or the 8-cartridge magazine may be purchased separately. It is evident that a pistol with only one magazine is a complete commercial entity and should be so classified for tariff purposes.

Plaintiff, in its brief, states—

If the Court should find that the additional magazine accompanying each pistol is a separate tariff entity, not part of an entirety, the question is presented as to whether such additional magazine should not be excluded from classification as a part of any pistol and relegated to classification under paragraph 397, Tariff Act of 1930, as modified, as a manufacture of metal, not specially provided for.

We consider this alternative contention to be untenable.

The fact that we find the extra magazine does not constitute such an integral and component part of the imported automatic pistol as to make it a part of the entire article within the principle of entireties as set forth in the oft-cited case of *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851, does not negate the fact that it is a part of an automatic pistol in the tariff sense. Inasmuch as there is no doubt from the record before us that the 8-cartridge magazine is in the nature of an accessory or an extra part of an automatic pistol and since there is an *eo nomine* provision in paragraph 366 of the tariff act, as modified, *supra*, for parts of pistols, the magazines in controversy were properly classified and assessed with duty by the collector of customs.

Plaintiff relies primarily upon the decision of our appellate court in *Norma Company of America* v. *United States*, 6 Ct. Cust. Appls. 89, T. D. 35338, wherein it was held that a machine tool, together with such alternate parts thereof as were necessary for the proper performance of the several functions of the machine, should properly be classified as an entity. *Norma* was distinguished in the *Garcia* case, *supra*, which is the latest pronouncement of the appellate court upon a factual situation such as is presented here. It is appropriate to remark that the *Garcia* case was decided subsequent to the filing of plaintiff's brief herein.

Upon the record before us and for the foregoing reasons, we overrule all claims in the protests and affirm the decision of the collector of customs.

Judgment will be entered accordingly.