(C. D. 2001)

GEHRIG, HOBAN & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided on rehearing [C. D. 1876] June 5, 1958)

*Lane, Young & Fox* (*William Whynman* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Upon motion of plaintiff, the judgment of this court entered herein, April 30, 1957, 38 Cust. Ct. 280, C. D. 1876, was set aside and the case restored to the calendar "for further proceedings."

When the case next appeared on the trial calendar, it was submitted by both sides without the introduction of new evidence and no further argument, oral or written, was presented.

In our original opinion herein, C. D. 1876, *supra*, we held an importation of latches, latch pins, latch buttons, and hinge pins, represented by exhibits 1, 2, 3, and 4, respectively, to consist of integral, constituent, and necessary parts of housings for time switches, and that said housings are integral, constituent, and component parts of time switches, without which such switches could not properly function. Accordingly, we reached the conclusion that said latches, latch pins, latch buttons, and hinge pins were properly classifiable for tariff purposes as parts of time switches and dutiable at the rate of 65 per centum ad valorem in paragraph 368 (a) (c) (6) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 368 (a) (c) (6)), as modified by the trade agreement with Switzerland, 69 Treas. Dec. 74, T. D. 48093. Note *United States* v. *American Express Co.*, 29 C. C. P. A. (Customs) 87, C. A. D. 175.

In a "Memorandum of Law" filed herein, in support of plaintiff's motion for a rehearing, it is pointed out that housings, if imported separately, to be combined with articles described in paragraph 368 (a), as modified (which includes "time switches"), are not provided for in subparagraph (a) but fall within the terms of subparagraph (e) of paragraph 368, which reads, so far as pertinent here, as follows:

(e) Cases, containers, or housings suitable for any of the movements, mechanisms, devices, or instruments enumerated or described in this paragraph, not specially provided for, when imported separately, 45 per centum ad valorem. * * *

From these premises, it is argued that "Since the Congress provided for a rate of duty of 45% ad valorem for a complete housing in subparagraph (e), it is unlikely that it intended to provide in the preceding subparagraph (c) a higher rate of duty (65% ad valorem) on parts of a housing, and a lower rate of duty (45% ad valorem) on a complete housing," citing cases.

While it is true that it is the duty of the courts in construing different provisions of the tariff act which appear to be in conflict to interpret the statutes so as to arrive at the intent of Congress, however, occasions do arise wherein seeming inequalities cannot be avoided.

An illustration of this situation is found in paragraph 366 of the Tariff Act of 1930, as modified, which was involved in *Stoeger Arms Corp. et al.* v. *United States,* 40 Cust. Ct. 164, C. D. 1977. In the *Stoeger* case, we held certain parts of pistols were dutiable at the rate of 52½ per centum ad valorem in said paragraph 366, whereas the complete pistols were subject to duty at the rate of $1.75 each and 27½ per centum ad valorem.

Similarly, in *Norma Company of America* v. *United States,* 6 Ct. Cust. Appls. 89, T. D. 35338, machine tools, together with one set of alternate parts, were held dutiable at the rate of 30 per centum ad valorem in paragraph 197 of the Tariff Act of 1909, whereas certain extra parts for use with such machine tools were held dutiable in paragraph 199 at 45 per centum ad valorem, as articles or wares, not specially provided for.

In *Lyons Transport* v. *United States,* 39 Cust. Ct. 103, C. D. 1912, this court held that, whereas paragraph 1791 of the Tariff Act of 1930 grants free entry to typewriters, it makes no provision for parts of typewriters; that, inasmuch as typewriters are machines, steel type imported to be used as parts of the typewriters was subject to classification in paragraph 372 of said act, as parts of machines and subject to duty at the rate of 13¾ per centum ad valorem. Although this case is now being reviewed by the United States Court of Customs and Patent Appeals, nevertheless, the controversy is apparently limited to the claim whether the type there in controversy should be dutiable in paragraph 372 or 397.

The foregoing are illustrations that might be termed legislative hazards which may result from time to time in framing complicated tariff schedules.

In view of the cases above cited, the fact that, in the present instance, parts of housings for time switches are subject to a higher rate of duty than is applicable to complete housings for such switches is deemed insufficient to warrant a conclusion different from that originally reached by the court in this case.

Other points raised in plaintiff's memorandum of law were duly considered in our original decision. Hence, it is deemed unnecessary to discuss them further here.

We find nothing in the record now before us which causes us to depart from our original decision and judgment, which are reinstated as our final determination of the case, as follows:

[DECISION]

An importation, described on the invoice as "Parts for electric switch housings" and more particularly identified as latches, latch pins, latch buttons, and hinge pins, was classified by the collector of customs as parts of time switches of the kind made dutiable at 65 per centum ad valorem in paragraph 368 (a) (c) (6) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 368 (a) (c) (6)), as modified by the trade agreement with Switzerland, 69 Treas. Dec. 74, T. D. 48093.

Plaintiff claims that said merchandise should be classified in paragraph 397 of said act (19 U. S. C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, as articles in chief value of metal and dutiable at 22½ per centum ad valorem.

The pertinent text of the competing provisions of the statutes above referred to is set forth below.

Paragraph 368 (a), as modified by the trade agreement with Switzerland, *supra*—

* * * clocks and other time-keeping, time-measuring, or time-indicating mechanisms, devices, or instruments containing such movements; * * * mechanisms, devices, or instruments intended or suitable for measuring the flowage of electricity; time switches; * * *.

Paragraph 368 (c) (6) of the Tariff Act of 1930, *supra*—

all other parts (except jewels), 65 per centum ad valorem.

(It may be noted that paragraph 368 (a), as originally enacted, did not contain an *eo nomine* provision for time switches.)

Paragraph 397 of said act, as modified, *supra*—

Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \* \*

 Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\* \* \* \* \* \* \*

 Other (\* \* \*)_____ 22½% ad val.

At the trial, the following exhibits were introduced by plaintiff:

Exhibit 1—latch, item Z 143447.

Exhibit 2—latch pin, item Z 143448.

Exhibit 3—latch button, item Z 143446.

Exhibit 4—hinge pin, item Z 143437.

Illustrative exhibit 5—housing.

Illustrative exhibit 6—housing, complete with exhibits 1, 2, 3, and 4.

Illustrative exhibit 7—time switch inserted in housing.

Illustrative exhibit 8—photograph.

It is not disputed that the imported articles are, in fact, manufactures in chief value of metal. It is also agreed between the parties litigant that if the imported articles are found to be parts of time switches, the classification and assessment are correct. *Per contra*, if it be found that the importer's contention is correct, then the articles are properly classifiable, as claimed, in paragraph 397, as modified, and dutiable at 22½ per centum ad valorem.

At the hearing of the case, the only witness was Robert A. Meier who appeared on behalf of the plaintiff. His testimony discloses that he is secretary and treasurer of Paul Reinhart & Co., Inc., the actual importer and owner of the merchandise in controversy, and that he is in charge of the buying, importing, and selling of the commodity (represented by exhibits 1, 2, 3, and 4), which was manufactured in Switzerland. It appears that the so-called housing (represented by exhibit 5) was manufactured in the United States and that the imported items were to be attached to it in this country. In its completed condition, the housing is illustrated by exhibit 6.

In describing the use for the various articles, the witness stated that the latch (exhibit 1) closes the housing; the pin (exhibit 2) attaches the latch to the housing; the latch button (exhibit 3) is attached to the cover, so that, when closed, the latch fastens over the button; the hinge pin (exhibit 4) is used to fasten the two parts of the housing together, all of which are clearly illustrated in the photograph (exhibit 8).

When asked to state the use of a housing, after being assembled with the merchandise represented by exhibits 1, 2, 3, and 4, the witness stated, "It houses a time switch," which is represented by illustrative exhibits 7 and 8.

Meier testified that the time switches were "sometimes" sold separately and that the cases were sold separately "Occasionally if a customer requires a replacement case, * * *," but that the only use for the housings is to enclose time switches. Although the witness stated that time switches were sometimes sold to some customers without the housing, in which instances they are set in a panel, the majority of sales included the time switch and the housing. Said the witness:

> * * * there is really one customer that buys most of them and that is the City of New York.

Due to the value of the article and its delicate nature, plaintiff was permitted to withdraw exhibit 7, with the understanding that it would be produced later, if necessary.

With reference to exhibit 8, which illustrates a time switch complete with housing, it is interesting to note that descriptive matter accompanying it speaks of—

> WEATHER-PROOF HOUSING—Highly resistant against corrosive atmosphere; die-cast zinc alloy housing with hinges for side opening; meter hook and side lugs for mounting. Tightly sealed with rubber gasket and pressure latch.

Plaintiff rests its claim for classification in paragraph 397 upon the doctrine of *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851. In that case, certain tripods, composed of wood, were classified as manufactures of wood in paragraph 412 of the Tariff Act of 1930, but were claimed to be dutiable as parts of cameras. In denying the claim of the importer in that case, our appellate court said:

> It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article*. [Citing cases.]

Further, the court observed:

> The mere fact that two articles are designed and constructed to be used together, does not necessarily make either a part of the other. *Columbia Shipping Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 281, T. D. 39085; *United States* v. *Kalter Mercantile Co. et al.*, 11 Ct. Cust. Appls. 540, T. D. 39680.

In the *Columbia* case, cited in *Willoughby, supra*, it appears that certain steam engines and fans were imported, designed, and intended to be operated together. In holding that the articles were not dutiable as entireties, the court observed:

> * * * the engines and fans as imported were not entireties, notwithstanding the fact that they were designed to be operated together; for when the articles are

installed for use each retains its own name and essential character, and neither one becomes in fact a part of the other. Nor do they then merge or unite so as to form together a new or distinct article having a different name or character. When in use the engine simply performs the function of an engine and retains its name as such, and the fan performs the function of a fan only and retains its separate name also.

In the *Kalter* case, also cited in *Willoughby, supra,* certain rubber boots, fitted with rubber loops, by means of which leather straps imported with them might be used to bind them at the feet and ankles, did not, in combination with the straps, become entireties. It was the opinion of the court that even though the boots and straps were designed to be used together, nevertheless, when so used, "each retains its identity, name, and character; each is a separate entity; and when attached, each performs its separate function without loss of any of its essential characteristics. The boot remains a boot and the leather strap remains a leather strap. When separated the boot remains useful as a boot. It retains its commercial entity and remains complete in itself, a rubber boot. The leather strap also retains its essential character and commercial entity, and remains complete in itself, a leather strap, or, as has been suggested, a leather belt."

In the case at bar, however, due to the delicate nature, character, construction, and use of time switches, a housing is a necessary attribute and essential part of a time switch. We take judicial notice of the fact that a housing is just as important and essential to the proper care, protection, and functioning of a time switch as a case is to a watch. It is, of course, vitally important that a time switch or any other time-keeping device must be protected against atmospheric conditions and from an accumulation of dust. It is not important that, on occasion, a time switch may be sold without the housing. The majority of sales, as stated by the witness, include the time switch and the housing. Moreover, when used without a housing, the time switch is inserted in a panel, which undoubtedly is covered or protected by a lid of some kind to prevent injury from outside elements. These exceptional or particular uses, however, should not have any particular bearing upon the proper classification of the articles for duty.

In our opinion, therefore, a housing is an integral, constituent, or component part of a time switch, without which it could not properly function as a time switch.

Since the latch, latch pin, latch button, and hinge pin are deemed to be integral, constituent, and necessary parts of a housing, without which a time switch could not properly function, we find and hold that those articles, represented by exhibits 1, 2, 3, and 4, respectively, are, in legal contemplation, parts of the housing.

In *Landay Bros.* v. *United States*, 5 Ct. Cust. Appls. 498, T. D. 35151, the court held that needles for phonographs were necessary parts of reproducers and that, as a reproducer was a necessary and indispensable part of a phonograph, the needles were integral parts of phonographs.

Applying that doctrine to the facts of this case, it logically follows that the subject articles of importation are parts of time switches and, hence, properly classifiable for duty as determined by the collector of customs.

For the foregoing reasons and upon the authorities cited, the protest is overruled.

Judgment will issue accordingly.