(C. D. 1996)

JOHN V. CARR & SON, INC. A. W. FENTON CO., INC. } *v.* UNITED STATES

## United States Customs Court, Second Division

(Decided May 21, 1958)

Tompkins & Tompkins (Allerton deC. Tompkins of counsel) for the plaintiffs. George Cochran Doub, Assistant Attorney General (Samuel D. Spector, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: Several models of a mechanism for automatically feeding sheets of paper into printing presses, together with a so-called press drive for another of such models, form the subject of the within controversy. This merchandise was classified upon entry as machines or parts thereof, not specially provided for, and, accordingly, was assessed with duty at the rate of 13¾ per centum ad valorem, pursuant to the provisions of paragraph 372 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739.

It is claimed by the plaintiffs that the imported articles are more properly provided for in said paragraph 372, as modified, supra, supplemented by T. D. 52820, as "Printing machinery (except for textiles and except duplicating machines other than printing presses)," and/or parts thereof, at the rate of 12½ per centum ad valorem.

The invoice descriptions of the particular models and parts imported are as follows:

> One Elless-Feeder, type 55 R, for Silk
> Screen Machine max. paper size 19½"
> x 25½"
>> One Elless-feeder, type T 64 R, for
>> Miehle 5/0 two rev. press
>> One Elless Feeder for Miehle 2/0 two
>> rev. press
> One Pressdrive complete with long Drive
> shaft for Elless Feeder No. 51109
>> One Side Frame No. 18671

With the exception of the aforementioned side frame, these items are pictorially represented in the record by plaintiffs' illustrative exhibits 1, 2, 3, and 4, respectively.

Plaintiffs also introduced the testimony of one Carl Williams, vice president and general manager of Super Speed Printing Machinery, Inc., the ultimate consignee of the merchandise here involved. He stated that his firm is engaged in the business of selling machinery for the graphic arts industry and that his function is to generally supervise

the conduct of the business, including all the machinery purchased and sold by the company.

During the 10 years he has been associated with the firm, Williams has had close personal experience with the type of merchandise involved in this case. He has helped to adapt the units for the American market, has written several trade journal articles describing their application and uses, has sold and installed them, and has operated and used them in Cleveland, Buffalo, and New York. Although he is not a mechanical engineer, the witness has studied mechanics at Ohio University and while in military service.

Williams described the subject merchandise as "a mechanical device designed to feed paper or any material which is to be printed into a printing press." He stated that it is driven by the press, and, by a process of suction and blast, it picks up individual sheets of paper and forwards them to the printing section of the press. The feeder is geared into the printing press by a drive shaft, as depicted in plaintiffs' exhibit 5, and is timed to synchronize with the revolutions of the press, so that it will deposit a sheet of paper at the precise moment when the type is in impression position.

So far as the merchandise before the court is concerned, the witness testified that he knew of no other use for it than in connection with a specific printing press, since each feeder unit is specially geared to a particular model and size of printing press, and is not adjustable. "The factory provides the proper gear with the proper number of teeth which will revolve in connection with the cylinder gear on the press." However, the factory does produce Elless feeders which can be used to feed machines for folding paper and cutting and creasing machines.

Williams further stated that printing presses usually have some kind of automatic feeder attachment and that it is not commercially feasible, in volume production, to hand-feed a printing press. Most printing establishments do, however, maintain a hand-fed press for short-run jobs.

In the opinion of this witness, who admittedly is not a printer, it is not practicable to hand-feed a press, if the automatic feeder should break down, and, to his knowledge, this has never been done. He was also of opinion that a feeder is a part of a printing press, and that cylinder presses utilizing sheets of paper, 19 by 25 inches, and in wider widths up to 75 inches, could not be purchased without an automatic feeder of some kind.

According to this witness, Elless feeders may be incorporated into any type of cylinder press. They may be substituted for a feeder already in the press, or may displace a manual operation. They are also used with offset presses, as shown in plaintiffs' illustrative exhibit

6, which type of press cannot be hand-fed, and with silk screen presses. The feeders do not process textiles or other material. They operate only upon some form of paper.

Defendant called as its only witness Grant L. Pitman, a cylinder pressman in the printing department of Patterson Sargent Paints. It appears, from his testimony, that he has been in the printing business since 1910, having worked successively as a feeder, assistant pressman, and, for the last 20 to 25 years, as pressman in charge. During that time, he has been engaged in every form of operation related to cylinder and job press work for commercial shops. He has manually fed paper to presses, has seen presses operated with automatic feeders, and is personally familiar with the so-called Elless feeder.

He stated that his employer's plant has an Elless feeder for its Miehle press, which was bought to replace a feeder that had broken, and that the object of any feeder is to "up the time of production." By that, he meant, it increases production over the manual operation, by speedier feeding and by enabling one man to watch a "couple of automatic presses where one man used to hand-feed one press."

In contrast to plaintiffs' witness Williams, Pitman was of opinion that a Miehle press could be manually fed, if the automatic feeder fails, and he has seen it done. All that is necessary is to disengage the automatic feeder by a clutch system. This stops the feeder, and the press can be operated manually. On this phase of the case, Pitman testified further as follows:

CROSS-EXAMINATION
BY MR. TOMPKINS:

X Q. Do you have to make any adjustments when you put in the clutch and stop using the feeder on a Miehle press?—A. There is a rod on what's called the feeder side. There is a gear side and a feeder side. There is a rod that's disconnected automatically and that feeder will not operate until it's brought back into motion, which is done at three different points, three different points of contact will automatically trip the press. The press will not run until there is arrangements made and this clutch is either in or out, if you want to start up the feeder or leave the feeder stand. The press itself meantime will operate.

X Q. The press will operate but will it operate and turn out large volumes of work in the same time without the feeder?—A. Absolutely not, with the understanding that your feeder is set and operating you are bound to make more time mechanically than you will hand feeding.

X Q. So for practical purposes the feeder is used for commercial runs?—A. I would say so, for runs of any kind the feeder—well, it's the trend today.

MR. TOMPKINS: No further questions.

REDIRECT EXAMINATION
BY MR. SPECTOR:

R. Q. Mr. Pitman, you can operate a printing business more efficiently with an automatic feeder than with a hand feed, is that correct?—A. Any kind of

automatic feeder automatically becomes the thing that pushes that press faster than any hand-fed press can do.

R. Q. Would you say that the automatic press, that is the printing press, can operate independently of the feeder?—A. Absolutely.

R. Q. And that the automatic feeder is not a necessary part of the press except to increase production?—A. That's correct.

Upon this record, counsel for the plaintiffs makes a two-pronged argument in support of the contention that the involved mechanisms are dutiable at the lower rate. He suggests, first, that automatic feeders fall within the scope of the term "printing machinery," for the reason that said term is of broad application and includes not only printing presses but all kinds of mechanisms relating to printing.

Alternatively, it is urged that since feeders are dedicated to use with printing presses, some, such as the offset press being incapable of operation without them, others, such as cylinder presses being unable to produce economically and in quantity without them, they are parts of printing machinery for tariff purposes.

It is claimed on behalf of the defendant that the provisions for printing machinery and/or parts thereof are statutory designations predicated upon use and that failure of the plaintiffs to establish chief use of the subject machines in either category leaves unchallenged the presumptively correct classification of the collector. Further, it is contended that as a feeder serves no function in the actual operation of printing, it being merely a device to accelerate the placing of paper onto the press, it is not a part of printing machinery.

It needs no elaborate discussion to arrive at the conclusion that an essential difference exists between the terms "machine" and "machinery," or that the latter is a broader and more comprehensive concept. As stated in *Johnson Iron Works, Dry Dock & S. B. Co. v. United States,* 48 Treas. Dec. 237, T. D. 41132, "The word 'machinery' includes appurtenances necessary to the working of a machine." That Congress appreciated the distinction in the terms and intended to perpetuate it, seems particularly evident from the language employed by it in setting forth the items covered by paragraph 372. To mention some of the articles provided for, there are sewing machines and printing machinery, embroidery machines and bookbinding machinery, lace-making machines and textile machinery.

To acknowledge the distinction is not, however, to resolve the question of what the provision for "printing machinery" was intended to encompass. Clearly, it does not include every mechanism which may be used in a printing establishment. *United States v. Charles Bashwiner, Lunham & Reeve, Inc.,* 28 C. C. P. A. (Customs) 100, C. A. D. 131. It has been held that for a device to fall within the classification of printing machinery, it must print something. *United States v.*

*Perry Ryer & Co.*, 41 C. C. P. A. (Customs) 18, C. A. D. 524. Under that construction, an automatic feeder which plays no direct role in producing printed matter is not *per se* printing machinery.

Is it then, as alternatively claimed by plaintiffs, a part of printing machinery?

The question of what constitutes a part of an article for tariff purposes has many perplexities, notwithstanding that it has frequently occupied the attention of our courts. A most comprehensive analysis of the leading authorities on the subject [1] may be found in the recent case of *United States* v. *Cody Manufacturing Co., Inc., Rohner Gehrig & Co., Inc.*, 44 C. C. P. A. (Customs) 67, C. A. D. 639, wherein it was observed:

> The foregoing authorities are uniform in applying the rule that an element which is not essential to the operation of an article for its intended purpose is not a part of that article.

In determining that which is "essential," consideration must, of course, be given to factors which contribute to the normal, efficient, and proper use of the parent entity. And an element which serves to amplify the functions of a device may appropriately be considered to be a part thereof, notwithstanding the ability of the device to perform ordinary operations without it. *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T. D. 41434, *Peter J. Schweitzer (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 285, T. D. 42872.

Furthermore, we are persuaded to the view that whereas a part of a machine is that which directly contributes to the function for which the machine is designed, a somewhat less rigid rule should apply in determining what constitutes parts of machinery. Implicit in the definition of machinery is an aggregate of means and appliances to accomplish an overall purpose, and every device which promotes that purpose is a part of the entire machinery.

While an appurtenance for a printing press, which is normally employed to provide it with the material upon which it prints, does not, strictly speaking, perform any of the operations of printing, it, nevertheless, as has been here established, augments the capacity of the press to produce in volume. It is not feasible for a cylinder press to function efficiently and economically without the adjunct of an automatic feeder. Under the principles heretofore enunciated, it seems clear that an automatic feeder is a part of printing machinery.

---

[1] The cases adverted to are: *Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T. D. 34249; *United States* v. *Bosch Magneto, supra*; *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T. D. 41673; *Peter J. Schweitzer (Inc.)* v. *United States, supra*; *Stoeger* v. *United States*, 15 Ct. Cust. Appls. 291, T. D. 42472; *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851; *United States* v. *Carl Zeiss, Inc.*, 24 C. C. P. A. (Customs) 145, T. D. 48624; and *United States* v. *Antonio Pompeo*, 43 C. C. P. A. (Customs) 9, C. A. D. 602.

We do not regard it as significant that a printing press may be operated manually, in the absence of a feeder, in view of the very convincing testimony of both witnesses that volume production could not be maintained by means of such alternative. Moreover, the fact that another means of supplying a printing press with its paper is available, does not deprive the automatic feeder of its character as a part of printing machinery. *Steel, Inc.* v. *United States*, 24 C. C. P. A. (Customs) 423, T. D. 48872.

Inasmuch as it is also herein established that each of the imported feeders, as well as the press drive, is specially designed and geared for a particular kind and size of printing press, and cannot be used on any other, we are of opinion that proof of chief use on a territorial basis has no pertinence here.

None of the evidence in this case has been addressed to the item described on the invoice, dated "25th Oct. 1954," covered by entry 1383, as "One Side Frame No. 18671." As to that item, only, it must be held that there has been a failure to overcome the presumption of correctness of the collector's classification thereof as parts of machines, not specially provided for.

Based upon the foregoing considerations, we find and hold that the merchandise here in question, except the item described as "One Side Frame No. 18671," is dutiable at the rate of 12½ per centum ad valorem, as parts of printing machinery, within the provisions of paragraph 372, as modified, *supra*. The claim in the protests is sustained to the extent indicated. All other claims are, however, overruled.

Judgment will be entered accordingly.