(C.D. 2978)

Consolidated International Equipment & Supply Co. *v.* United States

## United States Customs Court, Second Division

(Decided April 20, 1967)

*Siegel, Mandell & Davidson* (*Allan H. Kamnitz* and *David Serko* of counsel) for the plaintiff.

*Barefoot Sanders,* Assistant Attorney General (*Bernard J. Babb,* trial attorney), for the defendant.

Before RAO and FORD, Judges, and DONLON, Senior Judge

DONLON, Judge: The issue in litigation has to do with the tariff concept of machinery, as distinguished from the tariff concept of a machine. Involved are a machine, described below, and also a rectifier for use in that machine.

The mechanism, or device, at bar is one in which a negative (produced by a protographic camera) is placed in contact with a sensitized plate, to make a positive image of the negative. What differentiates this particular mechanism is that through a system of precise measurements and controls it will automatically produce on the plate, not just one image, but repeated images covering the entire plate, through what is called a step-and-repeat process. As the plate emerges from the device when this operation is completed, the plate is ready to be inserted in a photo-offset machine which will do a print job from this plate. The sheet which comes from the photo-offset machine will, therefore, be roughly comparable to a sheet of stamps, in that it shows many identical prints. It is the automatic step-and-repeat function used in preparing the plate for use in the photo-offset machine that distinguishes the device at bar, which is called a Multineg.

Plaintiff does not claim that Multineg is, itself, a machine which prints. The claim is that it is used with a printing machine, that is, the photo-offset machine, so that together they create a finished printed item, and that such utilization of the Multineg makes it printing machinery, or a part thereof, in the tariff sense.

Plaintiff's brief makes much of the point that Multineg is an invention new since 1930 and, therefore, unknown to Congress when the Tariff Act of 1930 was enacted. That fact presents no problem to us; for we agree that tariff acts are written for the future.

The tariff enumeration for printing machinery (and parts) is as follows:

Paragraph 372, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108:

Printing machinery (except printing presses and except printing ma-
chinery for textiles) :

 \*  \*  \*  \*  \*  \*  \*

 Other_____ 11½% ad val.

 \*  \*  \*  \*  \*  \*  \*

Parts, not specially provided for, wholly or in chief
 value of metal or porcelain, of any article provided
 for in any item 372 in this Part_____ The rate for the
                article of
                which they
                are parts.

The distinction between the terms "machine" and "machinery" is
ably summarized by Chief Judge Rao in his opinion in *John V. Carr
& Son, Inc.*, et al. v. *United States*, 40 Cust. Ct. 292, C.D. 1996, as
follows:

It needs no elaborate discussion to arrive at the conclusion that an
essential difference exists between the terms "machine" and "ma-
chinery," or that the latter is a broader and more comprehensive con-
cept. As stated in *Johnson Iron Works, Dry Dock & S. B. Co.* v.
*United States*, 48 Treas. Dec. 237, T.D. 41132, "The word 'machinery'
includes appurtenances necessary to the working of a machine." That
Congress appreciated the distinction in the terms and intended to
perpetuate it, seems particularly evident from the language employed
by it in setting forth the items covered by paragraph 372. To men-
tion some of the articles provided for, there are sewing machines and
printing machinery, embroidery machines and bookbinding ma-
chinery, lace-making machines and textile machinery.

To acknowledge the distinction is not, however, to resolve the ques-
tion of what the provision for "printing machinery" was intended to
encompass. Clearly, it does not include every mechanism which may
be used in a printing establishment. *United States* v. *Charles Bash-
winer Lunham & Reeve, Inc.*, 28 C.C.P.A. (Customs) 100, C.A.D. 131.
It has been held that for a device to fall within the classification of
printing machinery, it must print something. *United States* v. *Perry
Ryer & Co.*, 41 C.C.P.A. (Customs) 18, C.A.D. 524. Under that con-
struction, an automatic feeder which plays no direct role in producing
printed matter is not *per se* printing machinery.

Is it then, as alternatively claimed by plaintiffs, a part of printing
machinery?

The question of what constitutes a part of an article for tariff pur-
poses has many perplexities, notwithstanding that it has frequently
occupied the attention of our courts. A most comprehensive analysis
of the leading authorities on the subject may be found in the recent
case of *United States* v. *Cody Manufacturing Co., Inc., Rohner Gehrig
& Co., Inc.*, 44 C.C.P.A. (Customs) 67, C.A.D. 639, wherein it was
observed:

The foregoing authorities are uniform in applying the rule that an element which is not essential to the operation of an article for its intended purpose is not a part of that article.

In determining that which is "essential," consideration must, of course, be given to factors which contribute to the normal, efficient, and proper use of the parent entity. And an element which serves to amplify the functions of a device may appropriately be considered to be a part thereof, notwithstanding the ability of the device to perform ordinary operations without it. *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T.D. 41434, *Peter J. Schweitzer (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 285, T.D. 42872.

Furthermore, we are persuaded to the view that whereas a part of a machine is that which directly contributes to the function for which the machine is designed, a somewhat less rigid rule should apply in determining what constitutes parts of machinery. Implicit in the definition of machinery is an aggregate of means and appliances to accomplish an overall purpose, and every device which promotes that purpose is a part of the entire machinery. [Pp. 296, 297.]

Since the Multineg does not print, it is not printing machinery. *United States* v. *Perry Ryer & Co.*, 41 CCPA 18, C.A.D. 524. But is Multineg a part of printing machinery? To be a part, the proofs must meet the test laid down in *United States* v. *Ford Motor Company*, 51 CCPA 22, C.A.D. 831, where the court of appeals quoting from the decision of the court below, stated:

An article not an article constituent of a manufacture can not be considered as part thereof unless it has been advanced to a point which definitely commits it to that specific class and kind of manufacture. An article commercially suitable and commercially used for the making of different things is a material which is just as much adapted to the production of all of them as it is to the production of any one of them, and until it has been finally appropriated to some definite manufacturing use and has been given the distinguishing characteristics which clearly identify it as one of the components ultimately to be assembled into a particular completed whole, it can not be regarded as a part of any specified manufacture. [Pp. 24, 25.]

The Multineg is not a constituent of the photo-offset machine. There are no facts of record that "clearly identify it as one of the components ultimately to be assembled into a particular completed whole." While we recognize that "machinery" is a less exact term than "machine," and that in consequence there may be a somewhat less rigid concept of machinery parts than of machine parts, we find no precedent that would lead us to conclude that Congress intended to embrace, as parts of printing machinery, an entirely separate machine the function of which is to produce a material to be used in the printing machine.

In *Johnson Iron Works, Dry Dock & S.B. Co.* v. *United States*, 48 Treas. Dec. 237 (T.D. 41132), in which the court said that "appur-

tenances" necessary to the working of a machine are included in the tariff concept of machinery, the article at bar was a screw propeller for a steamship. The court held that the screw propeller was not a part of the ship machine (as claimed), but that it was a part of the ship machinery. It seems self-evident that the nature of a screw propeller is that it is dedicated to use in the ship.

In *Border Brokerage Co.* v. *United States*, 48 CCPA 113, C.A.D. 774, certain debarking equipment, used to prepare logs that were to be converted into paper pulp, was held not to be a part of pulp making machinery.

In *United States* v. *Frank P. Dow Co., Inc.*, 29 CCPA 48, C.A.D. 169, certain steel rollers were used to corrugate and otherwise prepare pasteboard, or paper, that was to be made into containers. Our appeals court said: "We think that in the instant case it cannot be logically held that the term 'paper-box machinery' and the parts provision cover parts of a machine which merely prepared material used in the manner described." (P. 52.)

"We know of no sound holding that a machine which merely makes the material that later is used by another machine is a part of the latter." (P. 53.)

Here the Multineg is used to prepare the plate that is used in the printing process. It may be assumed that the plate itself, together with the paper, ink, etc., used in the printing machine, are alike necessary to the printing process. But it does not follow that the machines which make the plate, the paper, and the ink, are appurtenances to the printing machinery. Rather, they are machines which make materials that later are used by another machine, the photo-offset printing machine.

The Multineg is not, in the tariff sense, printing machinery, for the reason that it does not print, nor is it a part of printing machinery, for the reasons we have stated.

We have reviewed the cases cited by the parties in their briefs, but discuss only those deemed most pertinent to the facts here of record.

Since the Multineg is neither printing machinery nor a part thereof, *a fortiori* the rectifier for use in the Multineg is not such a part.

Plaintiff has failed to overcome the presumptive correctness of the classification in liquidation, namely, as an article and parts thereof, having as an essential feature an electrical element, or device, under paragraph 353 as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade (T.D. 52739).

The protest is overruled.

Judgment will be entered accordingly.