**CONSOLIDATED INTERNATIONAL EQUIPMENT & SUPPLY CO.**

v.

**UNITED STATES.**

C.D. 3290; Protest Nos. 59/33146-9444-59.

United States Customs Court, Second Division.

Feb. 15, 1968.

per centum ad valorem. Plaintiff claims the merchandise is properly classifiable as printing machinery, or parts thereof, under the said paragraph 372, as modified by T.D. 54108, at the rate of 11½, 11, or 10½ per centum ad valorem, depending upon the date of entry of the merchandise.

The pertinent provisions of the statutes involved are as follows:

*Classified under:* Paragraph 372, Tariff Act of 1930, as modified by T.D. 51802:

Machine tools (except jig-boring machine tools) ....... 15% ad val.

Paragraph 372 of the Tariff Act of 1930 defines machine tools as follows:

\* \* \* machine tools, \* \* \* *Provided further,* That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

Siegel, Mandell & Davidson, New York City, (Allan H. Kamnitz and David Serko, New York City, of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen., (Harold L. Grossman and Alfred A. Taylor, Jr., New York City, trial attorneys), for defendant.

Before RAO and FORD, Judges.

FORD, Judge:

The protests at bar, consolidated for trial, involve merchandise known as Klischograph engraving machines and equipment therefor which was classified by the collector of customs as machine tools under paragraph 372 of the Tariff Act of 1930, as modified by T.D. 51802, and assessed with duty at the rate of 15

*Claimed under:* Paragraph 372, Tariff Act of 1930, as modified by T.D. 54108:

Printing machinery (except printing presses and except printing machinery for textiles):

\* \* \* \* \* \* \*

Other .......................... 11½%, 11%, 10½% ad val.
[rate dependent upon date of entry].

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part ............ The rate for the article of which they are parts.

The question before the court is whether the Klischograph machine herein is a machine tool, as classified by the collector, or printing machinery, or parts thereof, as claimed by plaintiff.

The court record is comprised of the testimony of one witness for the plaintiff and six exhibits received in evidence on behalf of plaintiff as follows:

*Plaintiff's exhibit 1* is a picture of the imported Klischograph model K–150 machine.

*Plaintiff's illustrative exhibit 2* is a picture of the scanning head which is part of the imported Klischograph model K–150 machine.

*Plaintiff's exhibit 3* is a metal stylus which is located in the scanning head.

*Plaintiff's exhibit 4* is a picture of the imported Klischograph model K–150 machine.

*Plaintiff's exhibit 5* is a plastic plate made by a Klischograph model K–150 machine.

*Plaintiff's exhibit 6* is a metal plate made by a Klischograph model K–150 machine.

Mr. Michael F. Goldsmith testified that he was vice president and a salesman for Consolidated International Equipment & Supply Co., the plaintiff herein, engaged in the business of selling and promoting sales of certain machines for the graphic arts industry; that he supervises the operations of the office and its salesmen; that he had been a salesman of machines in the graphic arts industry for approximately 30 years. He stated that he would categorize exhibit 1, a picture of the Klischograph K–150 machine at bar, as an engraving machine; that said machine bypasses the use of a camera, which is customarily used for making engraved cuts in the printing industry. The witness stated the machine has been on the United States market for about 15 years and that he has been acquainted with it for the past 5 or 6 years; that before the introduction of the Klischograph machine he was familiar with previous methods by which the same process was performed. The witness stated that he has sold a Klischograph machine and has seen one operate, but that he would not be able to operate it although he knew its general functions. He explained its operation as follows:

Actually, the original photograph is laid down after some introductory passes are made to find out the whitest white of the given original photograph, and the darkest black, and some marks made on the back for purposes of double-checking and making sure that the proper controls are used to bring up the purest whites and the purest blacks as per the original photograph. In any event, there is an electric eye that scans the original photograph, and it in turn activates a stylus or a needle, which digs into the plastic or the metal plate, because it can be made of either substance, and depending upon its depth and width, it will either cut a wider dot or a shallower narrow dot, depending upon the values of the original photograph, and that is how the dot formation is formed with varying degrees in between the whitest spot and the darkest spot on the original.

The witness identified plaintiff's illustrative exhibit 2 as the scanning head which accommodates the stylus or cutting needle and marked the location of the scanning head on plaintiff's exhibit 1 with the numeral "1". He identified plaintiff's exhibit 3 as a metal stylus, and plaintiff's exhibit 4 as a photograph of the K–150 model Klischograph machine, explaining that the operator is using his right hand to operate the electric contrasting push-button arrangement, and with his left hand is placing the original photograph to be scanned and screened onto a plastic or metal plate.

Mr. Goldsmith testified that plaintiff's exhibit 5 is a plastic plate which has been coated with a black material. This permits any abrasion to show the underlying white. The witness testified that plaintiff's exhibit 5 can use both plastic and metal to make the cuts; that the reason plastics are used is because they are more economical, the basic material being less costly when you use the plastic as opposed to metal, aluminum, copper, zinc; that the plastics are as durable as the metals.

Mr. Goldsmith identified plaintiff's exhibit 6, made on metal, as an end product of the K–150 Klischograph machine, and stated that plaintiff's exhibits 5 and 6 are used in the same way to produce the same end product, that when the scanner with the electric eye goes into operation, it will scan the picture for tonal values and activate the stylus which makes the cut-ins into the metal or plastic plate; that after the Klischograph produces the half tone cut as illustrated by the plastic or the metal, the cut is then mounted on a wooden block so that the overall dimension, together with the wooden block, can be tacked, glued, or double scotch taped on; that this enables the block to come

up to letterpress printing height; that it can then be placed into the printing machine letterpress, and printing is then produced from it; that the product of the Klischograph is an essential requirement for the modern letterpress because without it, you cannot produce printing except by the photoengraving method by which cuts were made for letterpresses prior to the introduction of the Klischograph, and which method is still used.

Mr. Goldsmith stated that he has seen letterpresses operate and that he knows how they operate; that a letterpress could not operate to produce an end product, a picture, without the use of a cut made by the Klischograph, or a similar machine. In explaining the function of the Klischograph machine with relation to the letterpress, Mr. Goldsmith testified that it produces the cut which, when mounted on a wood block, type high, can be used immediately in a letterpress for printing without the roundabout way of first producing a halftoned screened negative in the camera; that in the other method, using the halftone screen negative, he did not know that plastic was ever used with a camera; that, in his opinion, the Klischograph is a refinement of the process of other methods used previously. He stated that, in his opinion, the Klischograph is a necessary machine to be used in the graphic arts industry; that based upon his experience, he did not know of any one machine that is all-embrasive which could do everything and create a final product such as a picture found in a newspaper.

On cross-examination, Mr. Goldsmith testified that the Klischograph basically works on either metal or plastic and that a stylus is the means by which it works; that in his understanding of the term "tool," the stylus is not a tool; that it is a physical method of actually making an indenture. He stated that this stylus which operated on the metal or plastic is itself metal; that the Klischograph does not produce a printed product, and in and of itself is not a printing machine; that in operating, it does not employ ink, and does not create an image by pressure on a paper or other nontextile surface;

that by means of a stylus, it merely engraves, through a dot and dash procedure, an image on a metal or plastic plate.

It is the contention of the plaintiff that the Klischograph machine before the court is properly classifiable under paragraph 372 as printing machinery; or, in the alternative, that it is a part of printing machinery; that any parts thereof are parts of printing machinery; and that the Klischograph machine should not have been classified by the collector as a machine tool.

The meaning of the term "machine tool," as stated in United States v. Kurt Orban Co., Inc., 47 CCPA 28, C.A.D. 724, a case involving a metal scrap baler, has been before the courts frequently, but no precedent was found to control the particular importation there in contention. The primary function of the metal scrap baler was to merely compress scrap into convenient bales for handling and transportation. It also sheared off any loose ends, which then would be included in the next bale. The appellate court sustained the lower court in holding that the scrap baler was not a machine tool since it did not "work" on metal in the sense intended by Congress. In arriving at this conclusion the court commented:

> The word "work" is susceptible of such a wide variety of meaning that we have grave doubts Congress intended it to be construed as broadly as the Government urges. For example, in a broad sense any tool which changes the shape, size, or even the position of a piece of metal in any manner and for any purpose may be literally said to do "work" on it, even though the nature of that particular "work" be wholly incidental to the primary function of the device. Under such circumstances there is a substantial doubt in our mind that Congress intended that word to be given such a broad construction, and we think it proper to resolve that doubt in favor of the importer. United States v. Sussfeld, 1 Ct.Cust.Appls. 51, T.D. 31030; Woolworth v. United States, 1 Ct.Cust.Appls. 120, T.D. 31119; and Downing & Co. (Inc.) v.

United States, 12 Ct.Cust.Appls. 451, T.D. 40614.

In our opinion the conclusion of the Customs Court is a reasonable interpretation of the statute and proviso. That view is supported by reference to the Summary of Tariff Information, 1929, p. 813, which was considered in Keith Dunham [26 CCPA 250, C.A.D. 24], and reads:

* * * Typical basic machine tools are the lathe which revolves the work while a cuttter is held against it; the planer, which moves the work forward and back under a planing tool; the drilling machine for drilling holes; the miller, in which the work is shaped by the action of revolving toothed cutters, and the grinding machine, in which abrasive wheels are used to remove metal. * * *

It is obvious that none of the above exemplars even remotely resemble the unit at bar. [Id. at 30–31.]

In addition thereto, the Summaries of Tariff Information (1948), volume 3, part 4, makes the following comment:

Scope of summary.—Machine tools within the meaning of paragraph 372 of the tariff act include any power-driven machines that employ a tool for work on metal. By the trade, however, a distinction is made between (1) machine tools proper, consisting of power-operated metalworking machines having one or more tools and workholding devices and used for progressively removing metal in the form of chips, and (2) metalworking machines designed to shape metal by bending, pressing, and similar processes. * * *

There is no dispute in the instant case that the Klischograph is a machine. The question is whether the operation of the stylus in cutting the shadow dots into the metal plate which is used later in a printing letterpress to reproduce a picture is a machine employing a tool for work on metal within the meaning of paragraph 372. In our opinion, there are operations performable on metal, taking the baler case, supra, as one example, which are not within a clear concept of "work on metal" as Congress contemplated. Here the primary function of the stylus, in conjunction with an electric eye in a scanner, is to effect tonal values on a plastic or metal plate by a newly discovered photographic process which does not resemble the function of machine tool quoted, supra. We do not consider this "work on metal" as was contemplated by Congress in paragraph 372. At least there is substantial doubt in our mind that Congress intended such a broad construction for the term, and we, therefore, resolve such doubt in favor of the importer, following the reasoning in the Sussfeld and the Kurt Orban cases, supra, and find the Klischograph machine not to be a machine tool, as it was classified by the collector. This court having so found, the plaintiff's further argument that the Klischograph is not a machine tool because it works also on plastic is obviated.

Counsel for the defendant argues that the Klischograph machine is not properly classifiable as printing machinery under paragraph 372 as modified, citing United States v. Perry Ryer & Co., 41 CCPA 18, C.A.D. 524. In that case, the collector classified a certain McCorquodale machine as printing machinery. The machine deposited lacquers and paint pigments on paper cardboard to make color cards for displaying various color effects. No ink was utilized by the machine. The appellate court, in rejecting the claim that the machine was printing machinery then stated:

It is our view that a device, to fall within the classification of printing machinery, must print something. Nothing is printed on or by the McCorquodale machine. It deposits paint pigments on paper, cardboard, etc., primarily, as we understand it, to make cards for use in advertising and selling paint. For obvious reasons it tends to supplant prior methods of making such cards.

Along the same lines is the recent decision of this court involving the same importer. Consolidated International

Equipment & Supply Co. v. United States, 58 Cust.Ct. 329, C.D. 2978. The merchandise involved therein was designated as a Multineg machine, which is a mechanism for the automatic production on a plate of repeated images which are used in a photo-offset printing press. The court held such machine not be printing machinery, reviewing the decision in John V. Carr & Son, Inc., et al. v. United States, 40 Cust.Ct. 292, C.D. 1996, which cited United States v. Perry Ryer & Co., supra, for the principle that, in order for a machine to be printing machinery, it must print. The decision also held said machine not be parts of printing machinery and considered that question in line with the reasoning in United States v. Ford Motor Company, 51 CCPA 22, C.A. D. 831.

The *Carr* case, supra, made the following observation with respect to the distinction between "machine" and "machinery":

It needs no elaborate discussion to arrive at the conclusion that an essential difference exists between the terms "machine" and "machinery," or that the latter is a broader and more comprehensive concept. As stated in Johnson Iron Works, Dry Dock & S. B. Co. v. United States, 48 Treas.Dec. 237, T.D. 41132, "The word 'machinery' includes appurtenances necessary to the working of a machine."

\* \* \* \* \* \*

To acknowledge the distinction is not, however, to resolve the question of what the provision for "printing machinery" was intended to encompass. Clearly, it does not include every mechanism which may be used in a printing establishment. United States v. Charles Bashwiner, Lunham & Reeve, Inc., 28 CCPA (Customs) 100, C.A.D. 131. It has been held that for a device to fall within the classification of printing machinery, it must print something. United States v. Perry Ryer & Co., 41 CCPA (Customs) 18, C.A. D. 524. Under that construction, an automatic feeder which plays no direct role in producing printed matter is not *per se* printing machinery.

There is no question that the involved' machine has a specific purpose in the printing trade, to wit, the making of a plate for a letterpress. It is also not disputed that the subject machine does not print. Since the Klischograph plays no direct role in producing printed matter, said machine is not printing machinery.

The question as to whether such a machine constitutes parts of printing machinery was considered in the *Consolidated* case, supra, wherein the following comments were made:

\* \* \* To be a part, the proofs must meet the test laid down in United States v. Ford Motor Company, 51 CCPA 22, C.A.D. 831, where the court of appeals quoting from the decision of the court below, stated:

An article not an article constituent of a manufacture can not be considered as part thereof unless it has been advanced to a point which definitely commits it to that specific class and kind of manufacture. An article commercially suitable and commercially used for the making of different things is a material which is just as much adapted to the production of all of them as it is to the production of any one of them, and until it has been finally appropriated to some definite manufacturing use and has been given the distinguishing characteristics which clearly identify it as one of the components ultimately to be assembled into a particular completed whole, it can not be regarded as a part of any specified manufacture.

Following the reasoning applied therein, the Klischograph is not a constituent of a letterpress nor is it a component which will be assembled into a particular completed whole.

The decision in the *Consolidated* case, supra, then states:

\* \* \* While we recognize that "machinery" is a less exact term than "machine," and that in consequence there may be a somewhat less rigid concept of machinery parts than of

892

machine parts, we find no precedent that would lead us to conclude that Congress intended to embrace, as parts of printing machinery, an entirely separate machine the function of which is to produce a material to be used in the printing machine.

Following the reasoning in Consolidated International Equipment & Supply Co. case, C.D. 2978, supra, we are likewise of the opinion that the involved merchandise does not fall within the category of printing machinery or parts of printing machinery as claimed herein.

In view of the foregoing, we are constrained to overrule the protest without affirming the classification of the collector.

Judgment will be entered accordingly.

RAO, Chief Judge, concurs.