(C. D. 367)

Balfour, Guthrie & Co., Ltd. *v.* United States

United States Customs Court, Second Division

(Decided July 16, 1940)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Richard F. Weeks*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Los Angeles, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation of a ship's propeller shipped from Japan and entered at the port of Los Angeles in April 1939. Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as a manufacture of metal not specially provided for, plus a tax of 3 cents per pound under section 601 (c) (7) of the Revenue Act of 1932 as an article composed in chief value of copper.

In its original protest the plaintiff-corporation claimed that the propeller in question was properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of said tariff act as a part of a machine not specially provided for, and, alternatively, that said propeller was entitled to free entry under the provisions of section 446 of said tariff act, the pertinent portions of which read as follows:

Vessels arriving in the United States from foreign ports may retain on board, without the payment of duty * * * the legitimate equipment of such vessels. Any such * * * equipment landed and delivered from such vessel shall be considered and treated as imported merchandise: *Provided,* That * * * the legitimate equipment of vessels belonging to regular lines plying between foreign ports and the United States, which are delayed in port for any cause, may be transferred under a permit by the collector and under customs supervision from the vessel so delayed to another vessel of the same line and owner, and engaged in the foreign trade, without the payment of duty thereon.

By amendment the following additional claim was added to the protest:

Assessment of any amount or rate of duty, including the tax of 3¢ per pound under section 601 (b) (7), revenue act of 1932, as amended, is illegal as the merchandise was not imported within the meaning of section 601, revenue act of 1932 or section 1, tariff act of 1930. Also such assessment is contrary to the provisions of the treaty of 1911 between the United States and Japan and other treaties between the United States & Japan or other foreign countries including the treaty of 1815 between the United States and Great Britain. Furthermore, assessment of said 3¢ tax is contrary to section 630, Rev. Act of 1932, as amended by Act of June 13, 1933.

The pertinent portions of article 6 of the Japanese treaty (37 Stat. at L. 1504), under which the plaintiff claims free entry of the instant merchandise reads as follows:

The citizens or subjects of each of the High Contracting Parties shall enjoy in the territories of the other exemption from all transit duties and a perfect equality of treatment with native citizens or subjects in all that relates to warehousing, bounties, facilities and drawbacks.

There is no dispute as to the facts. It appears that the brass propeller, constituting the imported merchandise at bar, was shipped from Japan and arrived at the port of Los Angeles on the S. S. *Kano Maru*, a Japanese vessel, in April, 1939. It was entered for consumption, because the customs officials so demanded, but was immediately transferred to and installed in the S. S. *Atakuki Maru* another Japanese vessel resting at anchor in the port of Los Angeles, to replace a broken propeller in the latter vessel.

Hence, with the facts undisputed, the only questions at issue concern the law in the premises. The first is: Was the propeller in question ever imported into the United States? What constitutes an importation in the tariff sense has been the subject of considerable litigation. In the earlier decisions the test was whether the merchandise had left the custody of the Government and entered into the custody and control of the importer.

In *United States* v. *Cronkhite Co.*, 9 Ct. Cust. Appls. 129, T. D. 37980, the United States Court of Customs Appeals, reviewed at length previous decisions of the court on the subject, and said:

Tariff laws have usually been enacted for protective as well as revenue purposes. The portion of the revenue act herein reviewed is distinctively a protective measure. Bearing the purpose of the act in mind, it would seem obvious that the time when it was necessary that it should go into effect in order to become effective was when goods entered into the commerce of the country. * * *. Accordingly we must naturally assume that such merchandise would not be deemed by Congress to be "imported" within the language of the act until it had passed beyond the custody and control of the customs officials and into the custody and control of the importer, his agent or consignee, thereby becoming a part of the body commerce of this country. * * *.

However, 10 years later, in the case of *Patterson Steamships (Ltd.)* v. *United States*, T. D. 43685, 56 Treas. Dec. 492, the Third Division of this court, sitting in review, held that merchandise entered for consumption in this country for the purpose of making necessary repairs upon a vessel of foreign registry before the latter could proceed upon her homeward journey, was imported, and therefore subject to duty under the tariff laws of the United States. In this decision, which was never appealed, the court said:

> From the evidence presented at the trial it is clear that the merchandise in question was imported specially for use in making the repairs necessary to the steamer *Prindoc* before she could proceed upon her journey to her home port in Canada. It is also clear that the merchandise was brought to this country and regularly entered for consumption at the port of Duluth.
>
> The plaintiff claims that since it was not the intention of severing the goods from the mass of things belonging to Canada and uniting them with the mass of things belonging to the United States, there was no importation of the merchandise into the United States.
>
> Congress, in section 466 of the Tariff Act of 1922, gave the Secretary of the Treasury permission to remit or refund duties upon merchandise otherwise dutiable, which were to be used as the "equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in a foreign or coasting trade, or a vessel intended to be employed in such trade," only upon condition that the owner or master of such vessel furnish good and sufficient evidence to the Secretary of the Treasury that such vessel, while in the regular course of her voyage, was compelled, by stress of weather or other casualty, to put into such foreign port and purchase such equipments, or make such repairs, to secure the safety of the vessel to enable her to reach her port of destination. But no provision was made by Congress to permit merchandise imported especially for use upon foreign vessels in the making of necessary repairs while laid up in a port of the United States to be entitled to free entry. * * *.

In the very recent case of *Page & Jones* v. *United States*, 26 C. C. P. A. 124, C. A. D. 5, decided June 6, 1938, the appellate court, in affirming the decision of the Second Division of this court, held dutiable, as classified by the collector, a certain steam turbine engine which had been taken off a disabled vessel of British registry, en route to Mexico, after the vessel had been towed into the port of Mobile, Ala. The engine was then shipped to England where it was repaired, returned to this country, and reinstalled on said vessel.

There, as here, the entry for consumption was made solely because the customs officials had so demanded. Also, it was not intended that the engine should be entered into or be commingled with the commerce of the United States, nor was that done. In affirming the decision of this court that the engine in question was properly dutiable under the *eo nomine* provision therefor in paragraph 372 of the Tariff Act of 1930, the appellate court said:

48

It will be noticed from the opinion of the trial court that its action in over-ruling the protest was with reluctance. It appreciated, as we do, the seeming hardship that has been inflicted upon the importers and that it is unfortunate that they were required to pay customs duty amounting to $3,827.20 for goods which never went into the commerce of this country and which, as far as this record shows, were never intended to enter such commerce. It is regrettable that, as far as appears from the instant record, there was no remedy found in the Tariff Act of 1930 for the hardship complained of. Providing such a remedy is the province of the legislature and not of the courts.

It being therefore clear that the propeller in the instant case was actually imported in the tariff sense, the next question that arises is whether it is entitled to free entry under article 6 of the treaty between the United States and Japan (37 Stat. at L. 1504).

Counsel for the plaintiff in their brief filed herein contend that the duty imposed on said propeller under paragraph 372 of the Tariff Act of 1930 was a "transit duty" within the meaning of said treaty. They quote the dictionary definition of a transit duty as "a tax imposed on goods passing through a country."

Counsel for both parties in their briefs filed herein quote the following definition from the Dictionary of Tariff Information:

TRANSIT TARIFFS, tariffs which are levied upon foreign goods passing through one country to another. Although transit tariffs were formerly prevalent, they were step by step abolished in the course of the last century in most countries.

In our opinion, the term "transit duty" is a tax which might be imposed on an article passing from one foreign country to another through a third country; such, for instance, as merchandise passing from Canada to Mexico through the United States. Section 553 of the Tariff Act of 1930, and articles 902 to 909 inclusive of the Customs Regulations of 1937, provide how such merchandise may be entered under bond for shipment through the United States free of duty. That plainly is not the situation in the instant case.

Moreover, the facts in the instant case do not come within the purview of section 446 of the Tariff Act of 1930, which is referred to in plaintiff's protest.

We are therefore of the opinion that the merchandise at bar is not entitled to free entry under article 6 of the Japanese treaty.

This brings us to the last claim of the plaintiff that the propeller in question is properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as part of a machine not specially provided for. That question we believe is controlled by the decision of this court in *Johnson Iron Works, Dry Dock & S. B. Co.* v. *United States*, T. D. 41132—G. A. 9040, 48 Treas. Dec. 237.

In that case this court had before it the question of the proper dutiable classification of a certain screw propeller which was imported and installed on the steamship *Falkenjeld*. There the propeller was classified for duty at the rate of 40 per centum ad valorem under paragraph 399 of the Tariff Act of 1922 as a manufacture of metal not specially provided for, and was claimed to be properly dutiable at the rate of 30 per centum ad valorem as a part of a machine not specially provided for under paragraph 372 of said act, which latter provision was literally reenacted in paragraph 372 of the 1930 act here invoked by the plaintiff. In overruling the claim, the court differentiated between the terms "machinery" and "machine" and said:

The authorities seem to be in accord in holding that the term "machinery" is very much more comprehensive in scope than the word "machine." * * *. Unquestionably, the term is broad enough to include a number of machines and their connecting appurtenances which are operated as a unit for a given purpose. But because of such use, it does not follow that the appurtenances would be properly classifiable for tariff purposes as integral parts of any of the machines. Merely because a dynamo is connected by a belt with the machine which supplies the operating power does not make the dynamo part of the power machine. Each is a complete machine in itself, but when used together the two and the connecting belt might properly be called "machinery" without making the belt a part of either machine or one machine a part of the other.

* * * * * * *

While, therefore, it may be entirely proper to regard the present propeller as a part of the operating machinery of the vessel in which it is installed, that fact does not necessarily imply that it must likewise be held to constitute an integral part of the engine which operates it. While the two and the connecting crank shaft respond to the collective term "machinery", it does not follow that they are equally comprehended by the word "machine." * * *.

The mere fact that two articles are constructed and designed to be used together does not necessarily make either a part of the other. *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. 322, T. D. 46851.

Upon the established facts and the law applicable thereto we hold that the propeller in question is properly dutiable at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as a manufacture of metal not specially provided for, plus a tax of 3 cents per pound under section 601 (c) (7) of the Revenue Act of 1932 as an article composed in chief value of copper, as classified by the collector. All claims of the plaintiff are therefore overruled and judgment will be rendered accordingly.