(C. D. 968)

LIBERTY LACE & NETTING WORKS v. UNITED STATES

## United States Customs Court, Second Division

(Decided December 5, 1945)

*John R. Rafter* (*Otto Fix* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

LAWRENCE, Judge: The imported mechanism is invoiced as "Jardine's patent Threading Machine." It was assessed with duty at 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1920 as a machine, not specially provided for. It is claimed, in the amended protest, to be properly dutiable at 20 per centum ad valorem under the provision for—

Textile machinery, finished or unfinished, not specially provided for, for textile manufacturing or processing prior to the making of fabrics or woven, knit, crocheted, or felt articles not made from fabrics (except worsted combs, bleaching, printing, dyeing, or finishing machinery, and machinery for making synthetic textile filaments, bands, strips, or sheets) * * *

a provision which was incorporated in said paragraph 372 by virtue of the trade agreement with the United Kingdom, effective January 1, 1939, 74 Treas. Dec. 253, T. D. 49753. The machine was entered subsequent to that date.

The invoice, which is in evidence herein, contains the following statement which Government counsel agrees is true and correct:

This machine does not manufacture net or lace. It merely threads the bobbin and inserts the bobbin in a bobbin carriage. The carriage with the inserted threaded bobbins are then inserted in a net making machine. Not believed essential part of the machine. The threading could be done by hand.

In invoking the above-quoted provision in said paragraph 372, the plaintiff contends that the work performed by this threading machine is in the nature of "processing" prior to the making of a fabric in the form of a net. We are satisfied that that claim is well founded.

A net is a fabric within the following definitions [italics ours]:

Net, a *fabric* of thread, cord or wire, the intersections of which are knotted so as to form a mesh.—Encyclopaedia Britannica, eleventh edition.

Net (1) A *fabric* of twine, thread, or the like, wrought or woven into meshes, and used for catching fish, birds, butterflies, etc.—Webster's International Dictionary, second edition.

Netting (c) Any *fabric* of crossing cords, threads, ropes, wires, or the like, with open spaces between.—Webster's New International Dictionary.

Netting (1) A *fabric* of openwork; a net.—New Standard Dictionary of the English Language (1913).

The context of the above-quoted invoice description, accepted as correct by Government counsel, clearly indicates that the kind of

thread therein referred to is composed of textile material, and not of wire or some other nontextile substance. Presumably, then, the product of the net-making machine therein mentioned is a textile fabric. It only remains to be determined whether, prior to the making of such fabric, the imported machine performs a "processing" operation.

In our opinion a machine which makes such net, and which contains as an integral part thereof a bobbin carriage which has been threaded by the imported "Jardine's patent Threading Machine," is unquestionably a textile machine. But it will be observed that the provision relied upon by the plaintiff calls for "textile machinery," which obviously is a broader term than would be a provision for textile machines. *United States* v. *J. E. Bernard & Co., Inc.*, 28 C. C. P. A. (Customs) 182, C. A. D. 142. There, the court was considering the question of the tariff status of two filters, and, in the course of its opinion, made this observation:

* * *. While the combined units may fall within the broad designation of machinery, it must be borne in mind that there is a distinction between "machinery" and "machines," and that paragraph 372, *supra*, while providing for parts of machines does not provide for parts of machinery.

\* \* \* \* \* \* \*

The filters are not themselves machines and the trial court properly so held. The error on the part of that court, as we view it, lay in the holding that they constitute parts of machines in the sense of paragraph 372, *supra*.

If the two filters there under consideration were not in themselves machines, but were, as indicated by the court, "machinery" when combined for operation as a unit, then, with even greater force, would the present threading machine and the said net-making machine constitute textile machinery, because the former processes the thread used by the latter in making net.

In *Johnson Iron Works, Dry Dock & S. B. Co.* v. *United States*, 48 Treas. Dec. 237, T. D. 41132, a screw propeller, assessed with duty under paragraph 399 of the Tariff Act of 1922 as a manufacture of metal, not specially provided for, was claimed to be properly classifiable under the provision in paragraph 372 of said act for "machines or parts thereof." In the course of its decision in that case, this court, then the Board of General Appraisers, said:

No direct claim is made that the propeller constitutes an integral part of the engine which operates it. It is claimed merely that it forms part of the "machinery" of the vessel. However, the provision invoked by importers calls for "machines or parts thereof." That there happens to be another provision in said paragraph 372 for "textile machinery or parts thereof," is significant. Evidently, Congress intended to differentiate the term "machinery" from "machine."

"Machinery" is not synonymous with "machine." Seavey. v. Central Fire Ins. Co. (111 Mass. 540, 541); Fenson v. Bulman (17 Man. 307; 7 West L. R. 134, 137). The word "machinery" is of a much broader application and much more comprehensive and extensive. Worden-Allen Co. v. Milwaukee (171 Wis. 124; 176 N. W.

877, 878, and other cases cited in vol. 38, p. 330, Corpus Juris). The word "machinery" includes appurtenances necessary to the working of a machine. Bache *v.* Central Coal, etc., Co. (127 Ark. 397; 192 S. W. 225, 227, and other cases cited in said volume).

Likewise in volume 3, page 204, Second Series of Words and Phrases, we find the following:

According to Webster's International Dictionary a "machine" is any mechanical contrivance, while "machinery" is the means and appliances by which anything is kept in action or a desired result is obtained: * * * (Tubbs *v.* Mechanics' Ins. Co., 108 N. W. 324, 326, 131 Iowa 217.)

And on page 203 of the latter work it is stated that—

According to Bouvier's Law Dictionary "machinery" is a more comprehensive term than "machine" and includes the appurtenances necessary to the working of a machine. (Citing Doty *v.* Oriental Print Works Co., 67 Atl. 586, 591; 28 R. I. 372, and numerous other cases.)

Inasmuch as the imported threading machine performs the necessary processing work to enable the net-making machine to produce a textile fabric, it will be seen how precisely accurate is the designation of the threading machine as "Textile machinery * * * for textile * * * processing prior to the making of fabrics," as contemplated by the trade agreement with the United Kingdom, *supra.*

Our appellate court was evidently of the same mind when it considered the case of *United States v. American Textile Engineering, Inc.,* 26 C. C. P. A. (Customs) 48, T. D. 49597. It there clarified its previous rulings on what constituted textile machinery, particularly those rendered in *Whitlock Cordage Co. v. United States,* 13 Ct. Cust. Appls. 656, T. D. 41490; *Passaic Worsted Co. et al. v. United States,* 17 C. C. P. A. (Customs) 459, T. D. 43916; *Jett & Co. v. United States,* 18 C. C. P. A. (Customs) 86, T. D. 44044; and *Edward Jefferson (Inc.) v. United States,* 18 C. C. P. A. (Customs) 322, T. D. 44583. Pointing out that it was not the purpose of those cases and others of like tenor to limit the scope of the provision for textile machinery to machines used in the *manufacture* of textile material, the court, in the *American Textile Engineering, Inc.* case, *supra,* said:

It may be that the language used in the *Passaic Worsted Co. et al.* case, *supra,* restated and followed in the *Jett & Co.* and *Edward Jefferson (Inc.)* cases, *supra,* is open to the interpretation placed upon it by counsel for appellee. However, as is apparent from our decision in the latter case, this court, in stating in those decisions that a textile machine was one used in the manufacture of textile materials, did not mean to be understood as holding that *only such machines as actually converted a material into a new material or article having a new name, character, or use* were intended by the Congress to be *included within the statutory provisions for all other textile machinery.* [Italics quoted.]

It may require more than one manufacturing process to convert a textile material into a new textile material having a new name, character, or use. Indeed, it appears from the Summary of Tariff Information, 1929, Vol. 1, pp. 823–835 (prepared by the United States Tariff Commission for the use of the Committee on Ways and Means of the House of Representatives), that many machines referred to therein as textile machinery, such as "machines for winding both raw silk and spun silk, as well as rayon, into various forms, bobbins, cops, skeins, 'beams' and

there are other shapes for dyeing, or weaving in the loom," have nothing whatso-ever to do with changing the character of the material on which they operate.

In *E. I. Du Pont de Nemours & Co.* v. *United States*, 27 C. C. P. A. (Customs) 146, C. A. D. 75, the court, after citing with approval its language last above quoted, said:

It will be noted from our quotation from the case of *United States* v. *American Textile Engineering, Inc., supra*, that we there referred to the Summary of Tariff Information, 1929, which mentioned several devices as being textile machinery. A device for winding rayon upon bobbins referred to in said Summary of Tariff Information does not involve a manufacturing process upon the rayon, and is no more essential in the production of rayon than is the step here involved of extracting water from the cellulose acetate material.

While it is true that in some of the cases decided by us a manufacturing process was involved in the use of the machines under consideration, and we have emphasized that fact, we have nowhere held that, in order to classify a machine as textile machinery, it is indispensable that the step performed by the machine must be a manufacturing process.

Continuing, the court made this further observation:

It is true that the first step in the manufacture of textile materials must be one which initiates such manufacture, thus distinguishing between the cases of *Passaic Worsted Co. et al.* v. *United States, supra,* and *Jett & Co.* v. *United States, supra;* but after this first step is taken and the process of the manufacture of textile material has begun, we hold that any machine chiefly employed to perform any step in such process [as well as any machine employed in said first step] is textile machinery, regardless of whether the particular step employed in a given case is in itself a manufacturing process.

After reviewing at some length the various judicial decisions on the subject of textile machinery, this court, in *Graemiger Bros., Inc.* v. *United States*, 12 Cust. Ct. 48, C. D. 829, concluded that—

Fairly summarized, the judicial authorities would seem to include within the term textile machinery (1) mechanisms which produce textile fibers, yarns, materials, or articles; (2) devices which improve such fibers, yarns, or materials *per se;* and (3) machines *which perform any step in the process of producing a textile material or textile article, whether or not the step itself is a manufacturing operation.*

We have italicized the class in which we believe the present threading machine falls, because its function is so to wind or process the thread as to make it available in form for conversion into a fabric in the net-making machine, the net, as above indicated, being a textile fabric.

As early as March 20, 1929, in *T. S. Southgate* v. *United States,* 55 Treas. Dec. 492, T. D. 43280—a case which arose under the Tariff Act of 1922—this court, interpreting the provision for textile machinery, said:

As we construe paragraph 372 and the various provisions therein for textile machines and machinery, the residuary provision for "all other textile machinery or parts thereof" is, and was evidently intended to be, exhaustive in scope and embracive of every kind and variety of textile machine not elsewhere specifically mentioned or specially provided for, the single determinative test of classifi-

cation thereunder being that the machine be exclusively or chiefly employed to operate, process, manipulate, or otherwise treat textile fibers, yarns, or fabrics. It is a provision predicated solely upon the use of the machines or machinery.

Viewed in the light of the long line of decisions covering textile machinery in cases arising under various tariff acts, the latest provision as found in the trade agreement with the United Kingdom, *supra*, would seem to affirm and ratify the judicial interpretations which have been uniformly adhered to. For example, it is very significant that in the latest provision there is contained the expression "for textile manufacturing or processing." It is reasonable to assume that the words "manufacturing" and "processing" were not intended to convey precisely the same meaning. The word "manufacture" has considerable breadth of meaning. As above judicially pointed out, it includes every step in the "process of the manufacture of textile material." One of the leading cases on the subject is *Tide Water Oil Company* v. *United States*, 171 U. S. 210. There, box shooks imported from Canada were made into boxes in the United States and subsequently exported. Drawback was claimed under a provision authorizing a remittance of duty on exported articles "wholly manufactured" in the United States from imported material. Construing the word "manufacture," the Supreme Court stated:

The primary meaning of the word "manufacture" is something made by hand as distinguished from a natural growth; but as machinery has largely supplanted this primitive method, the word is now ordinarily used to denote an article upon the material of which labor has been expended to make the finished product. Ordinarily, the article so manufactured takes a different form, or at least subserves a different purpose from the original materials; and usually it is given a different name. Raw materials may be and often are subjected to successive processes of manufacture, each one of which is complete in itself, but several of which may be required to make the final product. Thus, logs are first manufactured into boards, planks, joists, scantlings, etc., and then by entirely different processes are fashioned into boxes, furniture, doors, window sashes, trimmings and the thousand and one articles manufactured wholly or in part of wood. The steel spring of a watch is made ultimately from iron ore, but by a large number of processes or transformations, each successive step in which is a distinct process of manufacture, and for which the article so manufactured receives a different name.

The material of which each manufacture is formed, and to which reference is made in section 3019, is not necessarily the original raw material—in this case the tree or log—but the product of a prior manufacture; the finished product of one manufacture thus becoming the material of the next in rank. This case, then, resolves itself into the question whether the materials out of which these boxes were constructed were the boards which were manufactured in Canada or the shooks which were imported into the United States.

The word "process," so far as here pertinent, is defined as follows:

Process. * * * n. 3. A series of actions, motions, or occurrences; progressive act or transaction; continuous operation or treatment; a method of operation or treatment; * * * a chemical *process;* * * * a *process* of manufacture.

v. t.   *   *   *   2. To subject to some special process. Specif.: a. To heat, as fruit, with steam under pressure, so as to cook or sterlize.   b. To produce or copy by photo-mechanical methods.—Webster's New International Dictionary.

n. 1. A course or method of operations, natural or artificial, incident to the accomplishment of a result; a systematic series of actions in the production of something; as, a metallurgical *process*.

v. t.   *   *   *   2. To produce, as illustrations, by a process, especially by photoengraving: used chiefly in the past participle.—Funk & Wagnalls Standard Dictionary of the English Language.

In the field of patent law the term has been judicially construed to mean "a mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject matter, to be transformed and reduced to a different state or thing. *   *   *   " (*Cochrane* v. *Deemer*, 94 U.S. 780). A "process" is included under the general term "useful art" within the Patent Act (*Corning* v. *Burden*, 56 U. S. 252). A process is a mode, method, or operation whereby a result or effect is produced (*Kelley* v. *Coe*, 99 F. (2d) 435).

There is, therefore, a distinction between "manufacturing" and "processing." The former would seem to be broader in scope. In the main it relates to mechanical operations as a result of which a change is made in the form, shape, and physical characteristics of the material worked upon. Processing, on the other hand, as above indicated, involves the advancement of material but to a degree or extent which may effect less change than is implied by the proper use of the word "manufacturing." Typical examples of processes short of manufacturing would be the heating and drying of textile material in the course of manufacture. Also, more or less elaborate washing and cleaning processes might be applied to material without assuming the proportions of manufacturing operations. In other words, the material would not be changed to the extent that it would properly be called manufactured; but it would, nevertheless, be processed, as that word has been defined.

If it were not the purpose of the provision to differentiate between the terms, it is scarcely likely that both words would have been used. Clearly, the term "processing" was necessary to cover operations or treatments which did not assume manufacturing proportions.

On the established facts and the law applicable thereto we hold the "Jardine's patent Threading Machine" covered by the above-enumerated protest to be properly dutiable at the rate of 20 per centum ad valorem under the provision in the trade agreement with the United Kingdom, *supra*, for "Textile machinery *   *   *   for textile *   *   *   processing prior to the making of fabrics," as alleged by the plaintiff. That claim is therefore sustained.

Judgment will be entered accordingly.