(C.D. 4021)

AMERICAN FELDMUEHLE CORP. ET AL. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 14, 1970)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Peter J. Fitch* of counsel) for the plaintiffs.

*William D. Ruckelshaus*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

RAO, Chief Judge: The merchandise covered by these protests, consolidated at the trial, consists of triangular insert blanks, and tool tip blanks, made wholly of porcelain, which are processed after importation and used with machinery for cutting metal.

The merchandise was assessed with duty at 21 per centum ad valorem under item 649.45, Tariff Schedules of the United States, which provides for interchangeable tools for hand tools or machine tools suitable for cutting metal. The headnote to schedule 6, subpart 3E, which subpart includes item 649.45, provides, with certain exceptions not here pertinent, that the subpart covers only articles with a blade, working edge, working surface or working part of base metal, .or metallic carbides, natural or synthetic precious or semiprecious stones, or abrasive materials on a support of base metal. Since the imported articles are wholly of porcelain, they are not properly dutiable under item 649.45. Plaintiffs claim that they are dutiable at 14 per centum ad valorem under item 535.41, as machinery parts of porcelain, or, in the

alternative, at 15 per centum ad valorem under item 523.91, as mineral substances or articles of mineral substances, not specially provided for. The Government contends that the correct classification is under item 536.11, as ceramic wares, and articles of such wares, not specially provided for, of porcelain, at 45 per centum ad valorem.

The pertinent provisions of the tariff schedules are as follows:

Schedule 6, Part 3, Subpart E:

<u>Subpart E headnotes</u>:

    1. Except for blow and other torches (items 649.31 and 649.32), abrasive wheels mounted on frameworks (item 649.39), tool tips and forms for making tool tips (item 649.53), sewing sets, pedicure or manicure sets, or combinations thereof (items 651.11 and 651.13), and except for knives, forks, spoons, and ladles, all the foregoing which are kitchen or table ware of precious metal, this subpart covers only articles with a blade, working edge, working surface or other working part of—

    (i)   base metal;
    (ii)   metallic carbides on a support of base metal;
    (iii)   natural or synthetic precious or semiprecious stones on a support of base metal; or
    (iv)   abrasive materials on a support of base metal, provided that the articles have other functioning or working elements such as cutting teeth, edges, grooves, or flutes.

    \*     \*     \*     \*     \*     \*     \*

Interchangeable tools for hand tools or for machine tools, including dies for wire drawing, extrusion dies for metal, and rock drilling bits:

    \*     \*     \*     \*     \*     \*     \*

| | | |
|---|---|---|
| | Other: | |
| 649.45 | Suitable for cutting metal _ _ _ _ _ _ _ | 21% ad val. |

Schedule 5, Part 1, Subpart K:
Mineral substances, and articles of mineral substances, not specially provided for:

    \*     \*     \*     \*     \*     \*     \*

| | | |
|---|---|---|
| | Other: | |
| 523.91 | Not decorated _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | 15% ad val. |

Part 2, Subpart D:

535.41    Machinery parts, of porcelain or of
          subporcelain _____    14% ad val.

Part 2, Subpart E:

          Ceramic wares, and articles of such wares,
             not specially provided for:
536.11          Of porcelain or of subporcelain_____    45% ad val.

At the trial, samples of cutting tool tip blanks, as imported into the United States, were received in evidence as plaintiffs' exhibit 1. Melanie Bergner, an employee of American Feldmuehle Corp., identified one of the articles as a triangular insert blank, the same in all respects except size as those described on the invoices herein. She also identified two square pieces as samples of tool tip blanks designated as 10.009.00 on the invoices. She stated that such articles were never processed by her firm and that during 1965 they were sold in their imported condition to Dawson Carbide Industries.

Kenneth R. Beardslee, vice-president of Dawson Carbide Industries, Inc., testified that his firm is a fabricator of ceramic and carbide cutting tools. He was familiar with the merchandise purchased from American Feldmuehle Corp., and said that it was useless in its imported condition. It was ordered to a definite size because it had to undergo a difficult and costly process of grinding with a diamond wheel and his firm could not afford to remove much material. He explained that before resale, the blanks are processed into cutting tool tips as follows:

> These are received in the unfinished state. They are ordered to be finished to a specific size, which is done by grinding the top and bottom of the thickness of the piece, also around the periphery, putting on a radius on the corners that would be recommended for certain machining applications, and also a chamfer on the cutting edges. When we do this we would reduce this piece approximately in size about ten to five-thousandths, then it is ready to be applied for machining.

It must qualify between 3 and 5 microfinish to be acceptable to do a machining job.

Samples of finished pieces, both square and triangular, as prepared for shipment to Dawson's customers for use in machining metals, were received in evidence as exhibit 2. Mr. Beardslee stated that he had seen such articles used in machining brake drums, in boring cylinders and in turning shells. They are sold to the automotive, munitions, and aircraft industries and to the general machining trades.

The witness testified that the finished article is suitable for cutting metal for the following reason:

\* \* \* It is one of the next hardest materials to a diamond, that and some of the other materials that used to be used, such as cemented carbides. This is hard. Therefore, when properly diamond-lathed, to give it a very smooth cutting edge, it is just the only tool used with a proper holder and angles that will cut metal satisfactorily at the higher speeds.

According to the witness, the tool tip has to be rigidly held and applied to the part to be cut. Therefore, it is clamped into a mechanical tool holder which is inserted into what is called a tool post of a machine tool. Three or four holders may be put in the same tool post to perform different operations. A cylinder boring machine, for example, may have six heads, and tool tips, such as those in exhibit 2, may go into each head at the same time. The tool holder and the tool tip are essential to the machining process.

The witness explained that the tool tips are used with various kinds of machines, generally lathes and boring mills which perform turning or boring operations. Different shaped tool tips are needed for different functions. Customers order the tips to definite dimensions in order to get the benefit of the proper size for the job to be done. For a roughing cut, a thicker, larger blank or insert is used because more metal is removed. For a finishing operation, a smaller blank is used, such as a triangle. Mr. Beardslee did not know of any use for the articles other than machining applications.

The tips are known as "throw-away inserts" because they are generally discarded after all the cutting corners have been used. The witness explained that prior to the introduction of the throw-away insert, a piece would be placed in a tool shank and when it became dull it was sent back for regrinding, a costly operation. The square throw-away inserts provide eight cutting edges, four on each side. When all the cutting corners are used, the article is thrown away. Thus a number of tool tips may be used from time to time in the same holder. The holder may also be removed from the tool post of the machine and replaced by others of the same size.

According to the witness, the lathes, boring mills or other machines in which articles of the type involved herein are used would not serve any function without cutting tool tips. Tips made of high speed steel or other materials could be used instead of ceramic tips, but they would not get the same results. Cemented carbide cutting tool tips which are also throw-away inserts are interchangeable with ceramic tips for size, but the witness stated that the ceramic ones do a better job in comparable applications.

It is clear from the record presented that the articles as imported have been cut to dimensions which closely approximate those of their final form. They are processed after importation by grinding, putting

a radius on the corners and a chamfer on the cutting edges. The pieces are reduced in size about ten to five thousandths. These refinements are necessary to qualify the pieces for acceptance for machining operations. In their imported condition, they are useless. We conclude that the imported pieces are unfinished tool tips and inserts. *F. B. Vandegrift & Co., Inc.* v. *United States*, 55 CCPA 24, C.A.D. 928 (1967).

Under General Interpretative Rule 10(h) of the tariff schedules, it is provided:

> (h) unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished;

There being nothing to the contrary in any of the claimed provisions, *supra*, the unfinished imported articles are classifiable as if in finished condition.

It has been stipulated that the finished articles are interchangeable tools for use with machine tools which are suitable for cutting metal. They may also be described as tool tips, unmounted. However, they are not classifiable under the provisions for such articles in items 649.45 and 649.53 because they are made of a different material than those specified.

Thus the question for decision is whether tool tips of porcelain which are not covered by any special provision are classifiable as machinery parts of porcelain or as ceramic articles of porcelain, not specially provided for.

These articles may be used with a number of different machines and, therefore, could not be classified as parts of any particular machine. *Chas. Kurz Co.* v. *United States*, 57 Cust. Ct. 73, C.D. 2733 (1966); *Engis Equipment Company* v. *United States*, 60 Cust. Ct. 436, C.D. 3413, 284 F. Supp. 798 (1968). Item 535.41, however, is a provision for machinery parts and the term "machinery" has been construed under prior tariff acts to be more comprehensive than the word "machine." *Johnson Iron Works, Dry Dock & S.B. Co.* v. *United States*, 48 Treas. Dec. 237, T.D. 41132 (1925); *United States* v. *J. E. Bernard & Co., Inc.*, 28 CCPA 182, C.A.D. 142 (1940); *Balfour, Guthrie & Co., Ltd.* v. *United States*, 5 Cust. Ct. 44, C.D. 367 (1940); *Liberty Lace & Netting Works* v. *United States*, 15 Cust. Ct. 180, C.D. 968 (1945); *John V. Carr & Son, Inc., et al.* v. *United States*, 40 Cust. Ct. 292, C.D. 1996 (1958).

Among the provisions of the tariff schedules is item 680.60 which covers machinery parts not containing electrical features and not specially provided for. According to the Tariff Classification Study of November 15, 1960, Schedule 6, page 276, this provision is intended

to apply to articles which can be recognized as being parts of machines but not as parts of any particular machine.

As to item 535.41, the Sixth Supplemental Report to the Tariff Classification Study states (p. 9) :

> Item 535.41. – *textile machinery parts, of porcelain or subporcelain:* Change the article description for this item to read as follows: "Machinery parts, of porcelain or of subporcelain . . .".
>
> *Explanation:* This change is needed to continue the substance of existing practices on such machine parts. Paragraph 372, Tariff Act of 1930, provides that certain machine parts of porcelain shall be dutiable at the rate applicable to the machine of which it is a part. The primary imports under this provision appear to be textile machinery parts. However, other machine parts of aluminum oxide ceramics (which are regarded as porcelain or subporcelain in the revised schedules) are being currently classified under paragraph 214, Tariff Act of 1930.

While this statement is not entirely clear, it indicates that the provision in paragraph 372 of the Tariff Act of 1930, which provided for parts at the rate applicable to the machine of which the article was a part, was being broadened to include other parts. Had Congress intended to limit the provision to parts of particular machines, it would have provided for machine parts at the rate applicable to the articles of which they were parts. See paragraph 372, Tariff Act of 1930, and items 668.50 and 670.74 of the Tariff Schedules of the United States.

In the instant case it appears that these tool tips or inserts are used with certain types of machines and that without such or like tips, the machines would be unable to carry out their intended function. While the use of any particular tip is optional and lasts only until the tip is worn out, tips of some kind must always be employed.

Optional or auxiliary equipment has been held to be part of an article where, once installed, the article will not function without it. *United States* v. *Antonio Pompeo,* 43 CCPA 9, C.A.D. 602 (1955) ; *Trans Atlantic Company* v. *United States,* 48 CCPA 30, C.A.D. 758 (1960) ; *Gallagher & Ascher Company* v. *United States,* 52 CCPA 11, C.A.D. 849 (1964).

In *Trans Atlantic Company* v. *United States, supra,* the court held that a bracket became a part of a door closer once the purchaser elected to mount it on the door frame rather than on the door. The court stated (p. 33) :

> In all of these cases, as in the present case, there was an option on the part of the purchaser of the article to use it either with or without the imported auxiliary devices. When the purchaser elected to use the article with such auxiliary devices, the devices were held in each case to be parts of the article for which they were designed and intended for use. In all these cases the articles

could have been used without the imported auxiliary device. In these cases the court considered the function of the auxiliary part when the purchaser elected to use it as a part of the article and did not consider it determinative that the article could function without the auxiliary part.

In *Gallagher & Ascher Co.* v. *United States, supra,* an auxiliary heater for a Volkswagen automobile which contributed to the safe and efficient operation of the car in frigid temperatures was held dutiable as a part of the automobile. The court stated (p. 16) :

> The facts of record that the auxiliary heater was optional equipment; that the Volkswagen came equipped with a conventional heater and that the automobile could be operated without the additional heater, are not of such vital import as to be determinative of the issue. When once attached to the automobile to which it was solely dedicated and in the manner disclosed, and in the performance of the function for which it was designed, it became a part of the automobile within the purview of paragraph 369(c) of the Tariff Act of 1930, as modified.

Since tool tips or inserts are essential to the proper functioning of certain machinery in its usual manner, particular tool tips, once installed, become parts of that machinery.

The fact that particular tips are attached only until worn down and are replaced by others does not preclude them from being classified as machinery parts. *Landay Bros.* v. *United States,* 5 Ct. Cust. Appls. 498, T.D. 35151 (1915) ; *Steel, Inc.* v. *United States,* 24 CCPA 423, T.D. 48872 (1937) ; *Steel, Inc.* v. *United States,* 28 CCPA 77, C.A.D. 128 (1940).

In *Landay Bros.* v. *United States, supra,* it was held that phonograph needles were parts of phonographs, the court stating (p. 499) :

> * * * The needle is a *necessary* part of the reproducer, the reproducer is an indispensable and integral part of the phonograph, and from that it would seem to follow that the needle is an essential part of the machine and not a mere aid, auxiliary, or accessory which might be omitted without rendering the whole device unserviceable. Whether the essential constituents that go to make up mechanical contrivances are made by different manufacturers, or are bought and sold by the importer as separate entities, or are standardized for all machines of the same class, or are quickly expended and frequently replaced, does not alter their status as parts of the mechanism, and they are just as much parts as if they had been assembled into the complete machine.

The *Steel, Inc.* cases involved forged steel grinding balls, used in grinding mills for the purpose of pulverizing ore or cement. The machines would not operate as grinding mills without steel balls or a distinctive kind of hard rock. It was held that the steel balls were component parts of the mills without which they could not function

as such. In the first case, the court held that there was no rule which required that all parts of a machine be attached together. It pointed out that it was immaterial that the mechanism would operate without the steel balls or their equivalent, since that operation would not be for grinding purposes. The court also stated (p. 426) :

> The more serious of appellant's contentions is that it is optional, according to the testimony, for the user of a grinding mill to use steel balls such as are here involved or an imported hard rock, and that therefore steel balls are not indispensable to the operation of the grinding mill. We have given this matter consideration and conclude that the mere fact that two articles each serving the same purpose may be optionally used for the completion of a machine does not prevent each of said articles from being a part of a machine. * * * It is sufficient to say that, in order for an article to be a part of a machine, it is not necessary that there be no substitute for such article.

Defendant claims that since the tool tips must be inserted into tool holders and since tool holders are provided for *eo nomine* in item 674.50, neither the tool holders nor the tool tips involved herein can be machinery parts. The fact that tool holders are *eo nomine* provided for does not preclude them from being parts of machines or machinery parts, although by reason of General Intepretative Rule 10(ij), they are classifiable under a specific provision rather than as parts. It is clear from the record that tool holders and tool tips are essential for the functioning of the type of machine which employs them, and under the authorities cited are machinery parts.

Defendant has cited *American Express Co. et al.* v. *United States*, 2 Ct. Cust. Appls. 312, T.D. 32049 (1911), for the proposition that a bayonet does not become a part of a gun although, when in use, it is affixed to a gun. The question in that case was whether bayonets were dutiable as side arms or as parts of guns. In reaching its decision the court relied on definitions of side arms which included bayonets, and pointed out that the bayonet is an auxiliary weapon and that when attached to a musket or rifle it impedes the successful use thereof in firing, which is the prime purpose of the gun. Here the prime purpose of the machinery is to cut metal for which purpose the tool tips are essential.

In our view, the tool tips and inserts involved herein are aptly described as machinery parts of porcelain and are dutiable under item 535.41 rather than under the more general provision in item 536.11 for articles of ceramic wares, not specially provided for. The statement in the Tariff Classification Study, Schedule 5, p. 96, to the effect that certain ceramic cutting tools (unspecified) are known to fall within item 536.11 does not manifest a Congressional intent to classify por-

celain cutting tool tips which are machinery parts under item 536.11 rather than under item 535.41. The Study also notes that the former is a basket clause embracing "ceramic articles not covered elsewhere in the schedules."

For the reasons stated, the protests are sustained to the extent that the merchandise is held properly dutiable at 14 per centum ad valorem under item 535.41 of the Tariff Schedules of the United States, as machinery parts of porcelain. All other claims are overruled. Judgment will be entered accordingly.