(C.D. 4341)

THE SERVCO COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 10, 1972)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiff.
*L. Patrick Gray, III*, Assistant Attorney General (*Frederick L. Ikenson*, trial attorney), for the defendant.

Before RICHARDSON and LANDIS, Judges, and
ROSENSTEIN, Senior Judge

LANDIS, Judge: The issue in this case is whether articles, imported from Austria and described on the invoice as non-magnetic semi-finished austenitic stainless survey drill collars without threading and without welded steel subs, were properly classified by customs as tubes of steel under TSUS item 610.52 or should be classified, as plaintiff contends, as parts of boring and extracting machinery for earth, minerals, or ores under TSUS item 664.05, or alternatively as parts of electrical measuring or checking instruments and apparatus under TSUS item 712.49.

The imported articles in the shape and forms of pipes and tubes, containing elements of chromium and molybdenum, were entered at the port of Los Angeles, Calif., on August 14, 1968.

Customs assessed the articles at the regular rate of 14 per centum ad valorem, and cumulative rates of 1.35 cents per pound on the chromium content (TSUS item 607.01) and 31.5 cents per pound on the molybdenum content (TSUS item 607.02).[1]

Schedule 6, part 2, provides for the classification of articles under TSUS item 610.52, in pertinent context, as follows:

> Part 2 headnotes: [2]
>
> 1. This part covers precious metals and base metals * * *, their alloys, and their so-called basic shapes and forms, and, in addition, covers metal waste and scrap. * * * This part does not include—
>
> \*   \*   \*   \*   \*   \*   \*
>
> (iv) other articles specially provided for elsewhere in the tariff schedules, or parts of articles.
>
> \*   \*   \*   \*   \*   \*   \*
>
> SUBPART B. – IRON OR STEEL
>
> Subpart B headnotes:
>
> 1. This subpart covers iron and steel, their alloys, and their so-called basic shapes and forms, and in addition covers iron or steel waste and scrap.
>
> \*   \*   \*   \*   \*   \*   \*
>
> 4. Additional duties: Iron or steel products which contain, by weight, * * * over 0.2 percent of chromium or over 0.1 percent of molybdenum * * * are subject to additional cumulative duties as provided for in items 607.01, 607.02 * * *, but these duties apply only with respect to products covered by provisions which make specific reference to this headnote in the "Rates of Duty" columns.
>
> \*   \*   \*   \*   \*   \*   \*
>
> Pipes and tubes and blanks therefor, all the foregoing of iron (except cast iron) or steel:
>
> \*   \*   \*   \*   \*   \*   \*

---

[1] The fact that the articles contained elements of chromium and molybdenum, and the weight thereof, are not in dispute.

[2] Schedule, part, and subpart headnotes are part of the substantive law of the Tariff Schedules of the United States.

610. 52       Other _____ 14% ad val.
                                                  + additional
                                                  duties (see
                                                  headnote 4)

Plaintiff's protest claim is that the articles are drill collars dutiable at either 9 per centum ad valorem under TSUS item 664.05 as parts of boring and extracting machinery for earth, minerals, or ores, or, at 11.5 per centum ad valorem under TSUS item 712.49 as parts of electrical measuring or checking instruments and apparatus.[3]

Schedule 6, part 4, subpart B, provides for the classification of articles under item 664.05, and schedule 7, part 2, subpart D, provides for the classification of articles under item 712.49, in pertinent context, as follows:

Part 4 headnotes : [Schedule 6]

1. This part does not cover—
      (i)   bobbins, spools, cops, tubes, and similar holders;

\*         \*         \*         \*         \*         \*         \*

      (v)   articles and parts of articles specifically provided for elsewhere in the schedules.

[Subpart B]

664.05     Mechanical shovels, coal-cutters, excavators, scrapers, bulldozers, and other excavating, levelling, boring, and extracting machinery, all the foregoing, whether stationary or mobile, for earth, minerals, or ores; pile drivers; snow plows, not self-propelled; all the foregoing and parts thereof_____    9% ad val.

[Schedule 7, part 2, subpart D]

Electrical measuring, checking, analyzing, or automatically-controlling instruments and apparatus, and parts thereof :

\*         \*         \*         \*         \*         \*         \*

712.49     Other _____ 11.5% ad val.

At the trial in Los Angeles, two witnesses, both associated with The Servco Company, plaintiff herein, testified. Defendant adduced the testimony of a witness employed in the tubular products division of Babcock & Wilcox Company, manufacturers of seamless and welded pressure tubing and mechanical tubing. A cross section sliced from one of the imported articles illustrates the thickness and cylindrical shape of the imported articles (exhibit 3). Photographs of the imported

---

[3] Plaintiff abandoned a protest claim under TSUS item 710.34.

articles in the condition imported (exhibit 1) and in the condition with an alloy "sub" welded to one end after importation (exhibit 2), complete the evidence.

The official papers indicate that the imported articles were imported in 30-foot lengths. Exhibit 3, the cross section piece, reveals that the metal material of which the imported articles are formed has a finished shine; that the articles measure 8 inches in diameter; that the longitudinally bored hole in the article measures slightly less than 3 inches in diameter. The cylindrical wall of the tube is about 2½ inches thick.

Plaintiff's witnesses, in sum, testified that the imported articles are so-called drill collars; that drill collars are cylindrical, rigid, heavy pieces solely used to apply weight to the drilling bit of boring machinery used to bore holes in the earth; that after importation, the imported articles are processed for that use by welding an alloy steel "sub" to one end of the article, or by cutting threads in one end; that they knew of no other use for the imported articles than to be processed to the condition of finished drill collars; that the drill collar is attached immediately above the drilling bit; that the drilling machinery with which a drill collar is used consists of a derrick, a hoist, surface equipment which includes a rotating mechanism, a "Kelly", a rotary table, the drill collar, the sub-surface bit;[4] and that worn out drill collars are sold to junk dealers.

A witness for plaintiff also testified that drill collars may be magnetic or non-magnetic; that as a drilling member magnetic and non-magnetic drill collars are used in the same way, but in surveying a directional bore hole a non-magnetic drill collar is necessary because a magnetic drill collar prevents getting a directional survey whereas a non-magnetic drill collar will not influence a clinograph which is a surveying instrument used to ascertain deviations from the vertical in a bore hole;[5] that the surveying instrument is powered by electrical batteries which also furnish timing light power for a photographic technique; and that non-magnetic drill collars are used in drilling di-

---

[4] In rotary drilling the "[c]ontrolled vertical motion of the tools is provided by wire line drum-type hoist with multisheave blocks in the derrick for multiplying hoisting capacity, controlling weight on the bit by partial support of the weight of drill pipe and heavy drill collars." *McGraw-Hill Encyclopedia of Science and Technology*, Vol. 2, p. 295.

[5] "The * * * [c]linograph * * * operates electrically but is powered by batteries contained in the instrument. The deviation from the vertical is indicated by a box level gage and the direction in azimuth by a gyroscopic compass permitting its use inside steel pipe. This operation is not possible when a magnetic compass is used unless the pipe is made of special nonmagnetic steel. Since the instrument also contains a watch and a dial thermometer, a simultaneous record of amount and direction of deviation, temperature, and time can be made on 16-mm film. Readings are taken, both descending and ascending, at regular intervals which are preset on the instrument before it is lowered on a wire line into the well, thus providing a check on accuracy. Level gages having maximum inclinations of 20, 40, and 55 degrees respectively are provided to be used according to the magnitude of deviation." *McGraw-Hill Encyclopedia of Science and Technology*, Vol. 10, p. 140.

rectional holes, which one of the witnesses defined as a hole "where you wish the bottom to be in a specific place, because some directional holes are actually vertical."

Defendant's witness, well qualified in the pipe and tube industry of the United States, testified extensively but exclusively concerning his knowledge of pipes and tubes. He examined exhibits 1, 2 and 3 and stated that, in the steel tubing industry in the United States, the articles illustrated by the exhibits would be known as seamless mechanical tubing, or hollow bar. On cross-examination, defendant's witness testified that his opinion (i.e., whether a particular article was a pipe or tube) was based on the configuration of an article and that he was not familiar with the term "drill collar".

Both sides have filed briefs. Plaintiff, having primarily briefed the claim under TSUS item 664.05, *inter alia* argues that item 712.49 is more specific than item 664.05, and that "it appears that the drill collars are more properly classifiable under Item 712.49" as parts of electrical measuring apparatus, than as parts of boring machinery under item 664.05. The record is much too scant to support the claim that the imported articles are properly dutiable under item 712.49, and we, accordingly, proceed to consider the claim under item 664.05.

Most of the discussion in defendant's brief is devoted to argument that the imported articles are tubes. Defendant contends that, assuming the imported articles are "parts" of boring machinery, the tariff provision for tubes is more specific than the tariff provision for "parts" of boring machinery and must, therefore, prevail over the provision for "parts" under TSUS, General Headnotes and Rules of Interpretation 10(ij), which provides that "a provision for 'parts' of an article * * * does not prevail over a specific provision".[6] In conjunctive discussion, defendant argues that under schedule 6, part 4, headnote 1 (i) and (v), *supra*, "tubes" and "parts of articles specifically provided for elsewhere in the schedules" are excluded from classification under item 664.05. Defendant further allows that the notes to the "Brussels Nomenclature",[7] on which plaintiff *inter alia* relies in its brief, support that drill collars are "classified in their own appropriate heading even if specially designed to work as part of a

---

[6] The complete rule is as follows :

TSUS

10. General Interpretative Rules. For the purpose of these schedules—

\*          \*          \*          \*          \*          \*          \*

(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but *does not prevail over a specific provision for such part.*

[7] The "Nomenclature for the Classification of Goods in Customs Tariffs", usually referred to as the "Brussels Nomenclature", is one of the classification systems which "exerted the greatest influence on the arrangement of the proposed revised schedules." Tariff Classification Study, Submitting Report, p. 8.

larger machine." We agree, as does plaintiff, that in common meaning the imported articles are generically tubes. For reasons we shall discuss, we cannot agree with defendant that, as a matter of law, the tariff term "tubes" is a specific provision for a product solely or chiefly used as a part of an article, and conclude that plaintiff has, *prima facie*, sustained its claim under item 664.05.

A number of considerations lead us to conclude that item 610.52 is not a specific provision for pipes and tubes which are identifiable parts of articles. It is first of all clear, as stated in the headnote, *supra*, that schedule 6, part 2 is intended to cover *inter alia* base metals and their so-called basic shapes and forms, and it is further clear that, part 2, subpart B is intended to classify so-called basic shapes and forms of iron or steel, including iron or steel in the shape and form of pipes and tubes. Schedule 6, part 2, headnote 1(iv), *supra*, which states that it does not include in any of its subparts, including subpart B item 610.52, other articles specially provided for elsewhere in the tariff schedules, or parts of articles, is obviously intended to exclude basic shapes and forms of metal, including pipes and tubes of iron or steel, that are specially provided for elsewhere in the tariff schedules. The headnote, in our opinion, also excludes identifiable parts of an article solely or chiefly used as a part of an article provided for, with its parts, in a superior heading of the tariff schedules.[8] A prime example of a specific provision for pipes and tubes of iron or steel is the provision in TSUS item 688.30 for iron or steel pipes or tubes prepared and coated or lined in any manner suitable for use as conduits for electrical conductors.[9] TSUS item 664.05 is a typical TSUS superior heading classifying apparatus and the parts thereof.

We note that the "Brussels Nomenclature", referred to by defendant, contains a heading for pipes and tubes of iron or steel (heading 73.18) that is substantively identical to the pipes and tubes of iron or steel classified by item 610.52. The "Brussels Nomenclature" greatly influenced the arrangement of the tariff schedules.[10] Where a TSUS arrangement and classification substantially follows that set forth in the "Brussels Nomenclature", the explanatory notes on the latter are persuasive of what Congress intended in TSUS. *Schwarz v. United States*, 57 CCPA 19, 22, C.A.D. 971, 417 F.2d 1391 (1969).

---

[8] n. 6.

[9] See also, *Tariff Classification Study*, Schedule 6, Part 2, p. 95 note "that the provisions in subpart B do not embrace iron or steel pipes or tubes prepared and coated or lined in a manner suitable for use as conduits for electrical conductors, and iron or steel fittings therefor. Such pipes and tubes or fittings would be provided for in part 5 of schedule 6 (item 688.30 and item 688.35). The provisions of subpart B likewise do not include flexible metal hose or tubing (see item 652.09 in part 3F of schedule 6)."

[10] n. 7.

The Brussels general note on parts,[11] vis-a-vis pipes and tubes, read with the exclusionary note on heading 73.18 of the Nomenclature confirms our view that, in general, schedule 6, part 2 is intended to include basic shapes and forms of metal including pipes and tubes of iron or steel, which have general use, and to exclude tubes and pipes made up into specific identifiable articles. Under the Brussels Nomenclature, pipes and tubes made up into specific identifiable articles include "those prepared for use in structures (heading 73.21), tubular sections of central heating radiators (heading 73.37), exhaust manifolds and exhaust pipes for internal combustion piston engines (heading 84.06), other machinery parts (Section XVI), saddle pillars and frames for cycles (heading 87.12)." [12]

Defendant, in citing the schedule 6, part 4 headnotes, *supra*, excluding from classification under item 664.05 "tubes" and "articles and parts of articles specifically provided for elsewhere in the schedules" does so without comment or discussion. We need only point out, therefore, that on this record the imported articles in the shape of a pipe or a tube are not *noscitur a sociis* of the class of "bobbins, spools, cops, tubes, and similar holders", [13] excluded by the part 4 headnote. *Nomura (America) Corp.* v. *United States*, 62 Cust. Ct. 524, 530, C.D. 3820, 299 F. Supp. 535 (1969), *aff'd*, 58 CCPA 82, C.A.D. 1007 (1971).

In its last point, defendant contends that the record fails to establish that the imported articles are solely or chiefly used with boring machinery as the classifying rule for "parts" requires.[14] It rests that argument on the testimony of plaintiff's witness that non-magnetic drill collars will not influence a clinograph in the directional drilling of a bore hole. Plaintiff, as defendant would have it, has foreclosed the sole or chief use of the imported articles as drill collars (i.e., parts) for boring machinery by claiming that the imported articles are parts of electrical measuring apparatus used in conjunction with clinographs. We earlier observed and stated that, in our opinion, the record

---

[11] The Explanatory Note to the Brussels Nomenclature, Volume II, Section XV, page 654, is as follows:

In general, identifiable parts of articles are classified as such parts in their appropriate headings in the Nomenclature.

However, parts of general use (as defined in Note 2 of this Section) imported separately are not considered as parts of articles, but are classified in the headings of this Section appropriate to them. This would apply, for example, in the case of bolts specialised for central heating boilers or springs specialised for motor cars. The bolts would be classified in heading 73.32 (as bolts) and not in heading 73.37 (as parts of central heating boilers). The springs would be classified in heading 73.35 (as springs) and not in heading 87.06 (as parts of motor vehicles).

[12] Explanatory Notes to the Brussels Nomenclature, Volume II, at page 672, exclusion (e).

[13] See TSUS item 256.65, classifying tubes of paper commonly used for holding thread or yarn.

[14] n. 6.

is much too scant to support plaintiff's claim that the imported articles are parts of electrical measuring apparatus under item 712.49. The weight of the testimony preponderantly establishes that the imported articles are unfinished drill collars, and that the sole use of drill collars is with boring machinery. The fact that in drilling a directional bore hole a non-magnetic drill collar, as opposed to a magnetic drill collar, must be used so as not to influence the surveying instrument, does not, on this record, make the non-magnetic drill collar anything less or anything more than the magnetic drill collar, namely, a drill collar solely or chiefly used with boring machinery to add weight to the drilling bit. "Unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished." [15] Plaintiff's witnesses have undeniably identified the imported articles as unfinished drill collars for sole use with boring machinery. Since the context of the tariff provisions before us contain nothing to the contrary, the unfinished drill collars are classifiable as finished parts for boring machinery. *American Feldmuehle Corp. et al.* v. *United States,* 64 Cust. Ct. 462, 467, C.D. 4021 (1970).

Both sides, as we mentioned above, have commented on "Brussels Nomenclature" heading 84.23 (Section XVI) which we find is substantially the same as TSUS item 664.05. Defendant would interdict the persuasive force of the Brussels note on parts under heading 84.23, with the argument that the classification of parts under TSUS is qualified by the same limitations as in Brussels which states that under Brussels, parts which in themselves constitute an article covered by Section XVI of Brussels must be classified in "their own appropriate heading" even if specially designed to work as part of a larger machine.[16] That statement must be read, however, in the complete text of the Brussels note (where the statement appears) discussing three categories of parts. The three categories discussed are : *parts* specialized to or mainly for use with particular machines or apparatus (classified under the same heading as the machines or apparatus) ; *parts* which in themselves constitute an article covered by a heading of the Nomenclature (classified under their own appropriate heading) ; and *parts* that are recognizable as such but are not recognizable as specialized to or mainly used with a particular machine or class of machines (i.e. which may be common to a number of machines falling in different headings). Brussels indicates that parts of the third category are classified generally as machinery parts (if not electrical) or as electrical parts of machinery and apparatus (if electrical). Drill collars,

---

[15] TSUS, General Headnotes and Rules of Interpretation, 10 (h).
[16] Explanatory Notes to the Brussels Nomenclature, Vol. III, Section XVI, p. 766.

on this record, are solely used with boring machinery, and are not articles covered by the tariff schedules as drill collars. We remain firm in the conclusion, therefore, that the TSUS headnotes to schedule 6, part 2 and the Brussels note on pipes and tubes (heading 73.18) which we discussed earlier, completely negate the idea that, in TSUS and Brussels, the provision for base metals in the basic shape or form of pipes or tubes is intended to cover articles that are drill collars (i.e., parts) solely used with boring machinery. This conclusion, we might add, is supported and persuasively reinforced by the note on Brussels heading 84.23 covering boring machinery. The note states as follows:

It should * * * be noted that many parts do not fall within the present heading since they are either:

(a) Specified elsewhere in the Nomenclature, e.g., suspension springs (heading 73.35), engines (heading 84.06, etc.) and electrical starting and ignition equipment (heading 85.08).
or

(b) Parts identical with those for motor vehicles and mainly used as such, and therefore classified as parts of motor vehicles (heading 87.06)—this applies in particular to wheels and steering and braking equipment.

Subject to the general provisions regarding the classification of parts (see General Explanatory Notes on Section XVI),[17] other parts of the goods of the present heading are classified here, e.g.:

Cutter bars, chains and jibs for coal cutters; rotary tables, swivels, kellies, kelly drive bushings, tool-joints, *drill collars*, subs, drill pipe guides, stop-collars, spider bowls, split bushing slips, beams, swivel sockets, drilling jars and drill stems and pipes, for well drilling machines (rotary or percussion); blades for scrapers, coal ploughs and strippers, etc.; digging buckets and grabs for excavators, bucket ladders for multibucket excavators; jibs for mechanical shovels; pile-driver hammers.[18] [Emphasis added.]

The protest claim under TSUS item 664.05 is sustained. Judgment will enter accordingly.

---

(C.D. 4342)

---

[17] n. 16.
[18] Explanatory Notes to the Brussels Nomenclature, Vol. III, Heading 84.23, p. 823.